In re GOODMAN ASSOCIATES,
LLC, Plaintiff

v.

WP MOUNTAIN PROPERTIES,
LLC, Defendant.

No. 09SA144.

Supreme Court of Colorado,
En Banc.

Jan. 11, 2010.

Martin, Lubitz & Hyman, LLC, Ira J. Bornstein, Denver, CO, for Plaintiff.

Foster Graham Milstein & Calisher LLP, Daniel K. Calisher, Stephen A. Fermelia, Julia R. Harvey, Denver, CO, for Defendant.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

This case addresses whether a default judgment may be set aside when a defendant failed to respond to the complaint after service of process was hand delivered to an assistant of defendant's registered agent, but the registered agent failed to find the pro-

cess papers in his in-box. After the trial court set aside its default judgment, the plaintiff, Goodman Associates, LLC ("Goodman"), filed this C.A.R. 21 petition seeking to reinstate the default judgment entered against the defendant, WP Mountain Properties, LLC ("WP").

We find that the trial court erred in setting aside the default judgment. Because service of process was adequate, the trial court had personal jurisdiction over WP, and the default judgment is not void under C.R.C.P. 60(b)(3). WP's neglect in failing to respond to the complaint was neither excusable nor a mistake and cannot justify setting aside the default judgment under C.R.C.P. 60(b)(1). No other provision of C.R.C.P. 60(b) permits the trial court to set aside the default judgment in this case. Accordingly, we direct the trial court to reinstate the default judgment in favor of Goodman.

## II. Facts and Procedural History

Goodman's declaratory judgment and breach of contract action against WP arises out of a failed purchase and sale agreement between the parties. Under that agreement, Goodman was to purchase real property from WP along with a dwelling unit to be constructed on the property by WP. The underlying dispute concerned whether Goodman was entitled to a return of its earnest money deposit as a result of its inability to obtain financing as contemplated in the parties' financing contingency clause.

Within the time permitted for service, a process server for Goodman delivered a copy of the summons and complaint to the address that is both WP's principal office address and the address for Rick Hermes, who is the registered agent for WP, in addition to being WP's manager and one of its members. The summons and complaint were hand delivered to Melanie Stalzer, a WP employee. Goodman's return of service identified Stalzer as "Personal Assistant" for WP.

After service, WP did not appear or otherwise respond to the complaint within the time permitted. According to WP, the reason for its failure to act was that Stalzer placed the process papers in Hermes's in-box, which he did not regularly check; as a result, Hermes was not aware that WP had been served. WP asserts that Hermes learned of the lawsuit in January 2009, more than two months after service, when a title insurance company contacted him about the suit.

In an affidavit submitted to the trial court, Hermes described his office procedure and the circumstances surrounding the receipt of service. He first asserted that Stalzer "is not my secretary, bookkeeper, or managing agent. Rather, she is an assistant to [WP] generally, providing services for me in that capacity as well as for three other persons to whom she reports directly." He further stated, "I do not consider Ms. Stalzer to be my primary assistant. As concerns work she may do for me, Ms. Stalzer is generally involved in scheduling appointments and filing. I do not expect Ms. Stalzer to be aware of the day-to-day details of my work for WP."

Hermes described the controller of WP as the functional equivalent of his administrative assistant with respect to his mail. He stated that urgent documents were to be given to him personally or left on the seat of his chair rather than placed in his in-box. Hermes acknowledged that he did not regularly check his in-box on account of the volume of paper in it (over one foot in height) related to the thirty-seven companies he managed. Hermes described his workload as particularly busy in the last fiscal quarter of 2008 due to the collapse of the financial market. Finally, Hermes asserted that, with respect to service of process, he was accustomed to in-person delivery by a process server.

After the time for answering passed, Goodman moved for default judgment, and default judgment was entered. Goodman subsequently recorded a transcript of judgment in Grand and Eagle Counties. After the transcript was recorded and, according to WP, before it was aware of the lawsuit, WP sold property in Grand County that was subject to the judgment lien without first paying the judgment. Thereafter, Goodman filed a complaint for foreclosure against the purchaser of the Grand County property for the amount

of the judgment lien. Four months after default judgment was entered, more than two months after it allegedly learned of the default judgment, and six weeks after the complaint for foreclosure was filed, WP simultaneously filed a motion to set aside the default judgment pursuant to C.R.C.P. 60(b) and a motion to stay proceedings in the foreclosure action.

In its motion to set aside the default judgment, WP asserted that Goodman did not properly serve WP pursuant to C.R.C.P. 4 when it served Stalzer because she was not a registered agent, manager, or member of WP and had no legal background or training. WP argued that the invalid service deprived the trial court of personal jurisdiction over WP, and therefore, the default judgment was void and should be set aside under C.R.C.P. 60(b)(3). WP alternatively argued that the other circumstances listed in C.R.C.P. 60(b) also existed and warranted vacating the judgment. Although WP did not expressly reference C.R.C.P. 60(b)(1) until it filed its reply in support of the motion, WP did initially argue that it had a meritorious defense, a necessary consideration under that subsection. As a defense, WP asserted that it did not owe Goodman the earnest money because Goodman failed to take reasonable steps to acquire financing and that it had its own claim for breach of contract based on that failure.

The trial court granted WP's motion, stating: "Upon review of the circumstances and for the reasons set forth in the Motion, the Court concludes that justice requires that this matter proceed to resolution on the merits. Therefore, the Court deems it appropriate to grant [WP]'s Motion." After receiving notice of the order setting aside judgment, the trial court in Grand County dismissed without prejudice Goodman's claims in the foreclosure action.

This petition by Goodman ensued, alleging that the trial court abused its discretion in granting WP's motion. In its reply in support of the petition, Goodman also requested that it be awarded the attorneys' fees and costs it incurred in filing this petition and responding to the motion below.

## III. Jurisdiction and Standard of Review

### A. Jurisdiction

■ We decided to exercise our original jurisdiction under C.A.R. 21 to review this case because no other adequate remedy is available. As we have previously held, "an appeal following a trial on the merits would not be an adequate remedy for a judgment lienor whose priority might be destroyed by the sale of the encumbered property by a judgment creditor whose rights attached subsequent to the default judgment." *Weaver Constr. Co. v. Dist. Ct.*, 190 Colo. 227, 230, 545 P.2d 1042, 1044 (1976). This case is time sensitive and requiring it to proceed through trial before filing an appeal may endanger Goodman's ability to recover on its judgment lien.

### B. Standard of Review

■ With the exception of C.R.C.P. 60(b)(3), the decision to grant relief under C.R.C.P. 60(b) is generally within the trial court's discretion and is reviewed for abuse of discretion. *First Nat'l Bank of Telluride v. Fleisher*, 2 P.3d 706, 713 (Colo.2000). Abuse of discretion exists where a decision is manifestly arbitrary, unreasonable, or unfair. *Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 167 (Colo.1993). However, we review de novo a trial court's decision to grant relief from a judgment pursuant to C.R.C.P. 60(b)(3) on the basis that it is void, e.g., for lack of personal jurisdiction over the defendant due to improper service of process. *First Nat'l Bank*, 2 P.3d at 713–14; *see also In re Marriage of Stroud*, 631 P.2d 168, 170 n. 5 (Colo.1981) ("[W]here the motion alleges that the judgment attacked is void, C.R.C.P. 60(b)(3), the trial court has no discretion. The judgment either is void or it isn't and relief must be afforded accordingly.").

## IV. Analysis

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." C.R.C.P. 55(c). Here, a judgment by default had been entered. Pursuant to C.R.C.P.

60(b), a court may relieve a party from a final judgment for the following reasons:

 (1) Mistake, inadvertence, surprise, or excusable neglect;

 (2) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

 (3) The judgment is void;

 (4) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

 (5) Any other reason justifying relief from the operation of the judgment.

C.R.C.P. 60(b).

The issues before us are (1) whether Goodman's service of process was invalid and deprived the trial court of jurisdiction to enter a default judgment; and (2) if service was valid, whether WP's failure to answer or otherwise respond to the complaint constituted mistake, inadvertence, surprise, or excusable neglect. These questions implicate subsections (1) and (3) of C.R.C.P. 60(b).

Although Goodman contends that propriety of service is not an issue because the trial court's order implicitly rejects WP's claim of lack of jurisdiction, the order's brevity prevents such a conclusion. Additionally, although WP argues that each and every subsection under C.R.C.P. 60(b) supports setting aside the default judgment, its references to C.R.C.P. 60(b)(2), (4), and (5) do no more than recast the argument that service was improper and the judgment void. *Cf. Atlas Const. Co. v. Dist. Ct.,* 197 Colo. 66, 69, 589 P.2d 953, 955–56 (1979) (finding that where the only basis for setting aside judgment is mistake or excusable neglect, the grounds for obtaining relief from judgment are covered by C.R.C.P. 60(b)(1), and the residuary clause (5) is inapplicable); *McElvaney v. Batley,* 824 P.2d 73, 75 (Colo.App.1991) (finding relief under C.R.C.P. 60(b)(5) inappropriate where the only grounds upon which relief is sought are covered by other clauses of the rule); *In re Adoption of P.H.A.,* 899 P.2d 345, 346 (Colo.App.1995) (finding that, where

basis of the challenge was fraud, C.R.C.P. 60(b)(5) could not apply). Therefore, we do not consider WP's separate contentions.

In its brief order, the trial court adopted by reference the reasons set forth by WP in its motion to set aside and therefore accepted the facts as asserted by WP. We thus review the propriety of the court's order based on WP's arguments and assertions of fact in its motion.

### A. Burden of Proof

To set aside a judgment under C.R.C.P. 60(b), the movant bears the burden of establishing by clear and convincing evidence that the motion should be granted. *Borer v. Lewis,* 91 P.3d 375, 380–381 (Colo. 2004). The burden of proof remains upon the defendant to establish lack of personal jurisdiction resulting in a void judgment under C.R.C.P. 60(b)(3). *Denman v. Great W. Ry. Co.,* 811 P.2d 415, 418 (Colo.App.1990). However, the burden may shift back to the plaintiff if the return of service insufficiently recites the essential facts to demonstrate adequacy of service. *Id.*

### B. The Judgment Is Not Void Due to Lack of Personal Jurisdiction

Taking the facts alleged by WP as true, we conclude that WP failed to establish insufficient service of process and therefore failed to establish a lack of personal jurisdiction resulting in a void default judgment. We find that delivery of the summons and complaint to Stalzer satisfied C.R.C.P. 4; specifically, delivery to Stalzer in her employment capacity resulted in valid service on WP through its registered agent.

We begin by recognizing that a default judgment entered by a court without personal jurisdiction over the defendant, e.g., due to an invalid service of process, is a nullity and without effect. *Weaver,* 190 Colo. at 232, 545 P.2d at 1045. Service of process on a limited liability company may be made by delivery to "the registered agent for service." C.R.C.P. 4(e)(4). Here, Hermes was WP's registered agent, and service on Hermes would be effective service on WP.

The court of appeals has held, and we agree, that in Colorado, a registered agent may be served in the same manner as a "natural person" under C.R.C.P. 4. *Merrill Chadwick Co. v. Oct. Oil Co.*, 725 P.2d 17, 18 (Colo.App.1986); *see also Swanson v. Precision Sales & Serv., Inc.*, 832 P.2d 1109, 1111 (Colo.App.1992) (applying *Merrill Chadwick*) (recognizing that this conclusion is at variance with the rule established by the federal courts, citing *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510 (3d Cir.1971)). Accordingly, C.R.C.P. 4(e)(1) permits service upon a registered agent, as a natural person, "at the person's usual workplace, with the person's secretary, administrative assistant, bookkeeper, or managing agent." C.R.C.P. 4(e)(1). Therefore, in this case, Hermes has been properly served if delivery to Stalzer constituted delivery at Hermes's "usual workplace, with [his] secretary, administrative assistant, bookkeeper, or managing agent."

As an initial matter, WP argues that the service affidavit certifying service insufficiently demonstrated that the appropriate person was served and that, as a result, the burden lies with Goodman to demonstrate adequacy of service. We need not address this burden-of-proof argument because the parties have fully litigated the broader question of proper service. Moreover, the record demonstrates that service was in fact adequate, as explained in this opinion.

There is no dispute that delivery was made to Stalzer, an employee at the address designated for both WP and for Hermes, WP's registered agent. The affidavit of service signed by the process server stated that delivery was made to "Melanie Stalzer as Personal Assistant for WP Mountain Properties, LLC."

However, in Hermes's affidavit to the trial court and in briefing to this court, WP and Hermes argued that Stalzer was not a secretary or other employee within the meaning of C.R.C.P. 4(e)(1). They explained the internal office procedures involving receipt of urgent materials and described how those procedures were not followed when Stalzer received the summons and complaint, noting that she had no legal background and train-

ing. In sum, WP's argument makes the distinction that while Stalzer was an assistant for WP who provided some administrative support to Hermes, she was not his primary assistant, did not review his mail, and was not tasked with handling legal documents.

Contesting the statement that Stalzer was not Hermes's "secretary, administrative assistant, bookkeeper, or managing agent," Goodman emphasized Hermes's acknowledgement that Stalzer "is an assistant to [WP] generally, providing services for me in that capacity," including "scheduling appointments and filing." Goodman contended that the distinction between primary assistants and other assistants is irrelevant under C.R.C.P. 4(e).

There is limited Colorado case law considering who may fall within the categories of individuals contemplated by C.R.C.P. 4(e)(1)'s list of "secretary, administrative assistant, bookkeeper, or managing agent." Indeed, both parties cite to the only two cases, both from the court of appeals, that appear to be on point and address service upon agents by way of delivery to their personal secretaries or similar employee: *Merrill Chadwick* and *Swanson*. The *Merrill Chadwick* court concluded that service upon the personal secretary of the registered agent at the address designated for both the agent and the defendant constituted proper service. 725 P.2d at 18. In finding that the methods of service available for an individual applied to a registered agent, the court reasoned, "Service upon a corporation's registered agent is service upon the corporation. A corporation may designate an individual as its registered agent. Service upon an individual may be accomplished 'by leaving a copy ... [of the summons and complaint] at his usual place of business, with his stenographer....'" *Id.* (quoting a prior version of C.R.C.P. 4(e)(1)) (citations to statute omitted). In that case, there was no debate as to the secretary's capacity as such.

*Swanson* applied this rule to a more complex set of facts in which the employment capacity of the person who received the service was contested. The summons and complaint was served on a secretary, employed

not by the defendant corporation but by its sole shareholder, another corporation. *Swanson*, 832 P.2d at 1110. The same individual who was the registered agent for the defendant corporation was also the president and director of the sole shareholder. *Id.* Additionally, the address listed for the defendant corporation was also the address where business was conducted for the sole shareholder. *Id.* at 1111. The secretary worked for the sole shareholder as a personal secretary to its president and not for the defendant corporation and its registered agent. *Id.* Technicalities aside, the secretary was working for the same individual at the same address, regardless of who paid her salary. *Id.* Therefore, it was reasonable to conclude that the secretary would give that individual notice of service regardless of the capacity in which he was being served. *Id.* As a result, the court of appeals held that the service made carried out the requisite purpose of notice. *Id.* at 1111–12. It was the working relationship that mattered for the purposes of C.R.C.P. 4(e)(1), not the technical employment relationship. *Id.*

■ As the *Swanson* court observed, the purpose of the service requirements in C.R.C.P. 4 is notice. Without notice of proceedings against it, the party allegedly served is deprived of the opportunity to appear and present a defense. *Id.* at 1111. While a party must be given sufficient notice of proceedings to satisfy due process, recent revisions to C.R.C.P. 4 reflected the need to expand and modernize the methods of service. *See* Richard P. Holme, *2006 Amendments to the Civil Rules: Modernization, New Math, and Polishing*, 35 Colo. Law. 21 (May 2006). Effective March 23, 2006, the rule underwent several revisions. *See id.* at 21–22. Relevant to this discussion, the categories of persons to whom process may be delivered were revised to modernize the terminology by deleting "chief clerk" and adding "administrative assistant." Also important is the replacement of the term "manager" with the phrase "managing agent." As is explained by Holme,

> The term "manager" is changed to "managing agent." This was done to make it clear that alternate service at the workplace is limited to service on "the person's secretary, etc.," not on a secretary or manager at the person's workplace. Service on a supervisor or manager of the business offers no assurance that the defendant will ever receive actual notice (except perhaps with his or her pink slip). If the defendant is to receive notice, it is likely to occur only when delivery is made to the defendant's subordinate, who will feel a genuine obligation to deliver the process. Thus, "managing agent" is used to distinguish the "person's managing agent" (acceptable) from a "manager" at the person's place of employment (unacceptable).

*Id.* at 22 (emphases removed). Thus, while service at a person's workplace is permissible, it is only effective in achieving the goal of notice when service is made upon an employee whose position presumptively includes delivery of papers to the relevant party.

■■ The language of the revised rule indicates that delivery to *any* employee at one's usual workplace may be insufficient. By the same token, the rule provides that service is sufficient if delivery is made to an assistant who performs clerical duties for the person to be served. The assistant need not work solely or exclusively for the person to be served. By requiring the assistant to work for that individual, the rule ensures that service is made on an employee who reports to that person. Beyond ascertaining that an employee falls within an appropriate category ("the person's secretary, administrative assistant, bookkeeper, or managing agent"), a process server is not required to determine that the individual will in fact give the papers to the named individual or agent. Instead, the burden is on the registered agent to put in place the systems and personnel to make certain that documents reach the registered agent in a timely manner.

In this case, delivery to Stalzer fulfilled the underlying purpose and goal of serving process. While Stalzer may not be what Hermes or WP considers Hermes's primary assistant, by their own acknowledgment, "she is an assistant to [WP] generally, providing services for [Hermes] in that capacity as well as for three other persons to whom she reports directly." They state that, "[a]s con-

cerns work she may do for [Hermes], Ms. Stalzer is generally involved in scheduling appointments and filing." While she may not be his sole assistant, Stalzer acts as an assistant to Hermes and performs administrative duties for him. Nothing more is required. It was reasonable of the process server to conclude that Stalzer would deliver to Hermes documents she received on his behalf. The facts of this case bear this out. Upon receipt of service of process, Stalzer in fact placed the service in Hermes's personal in-box in his office.

■ The extent of Stalzer's legal knowledge is irrelevant. The process server was not required to notify her of the contents of the documents. As we have explained,

> This rule requires that the copy of the summons and complaint be 'delivered' to the proper person, but clearly by its own terms does *not* require that this 'delivery' be accompanied by a reading aloud of the documents so served, or by explaining what they are, or by verbally advising the person sought to be served as to what he or she should do with the papers.

*Martin v. Dist. Ct.*, 150 Colo. 577, 580–81, 375 P.2d 105, 107 (1962) (applying former C.R.C.P. 4(e)(2) ) (emphasis in original).

Furthermore, the outcome here as to whether service was proper cannot be affected by Hermes's method of organization or lack thereof. Hermes voluntarily assumed the responsibilities of a registered agent, and he must establish the means to ensure that he properly fulfills those duties. To a reasonable person, delivery to an in-box sufficiently brings those documents to the attention of the owner of the in-box. *Cf. Merriam–Webster's Collegiate Dictionary* 628 (11th ed.2004) (defining "in-box" as "a box or tray (as on a desk) for holding incoming interoffice mail"); *The American Heritage Dictionary of the English Language* 885 (4th ed.2000) (defining "in box" as "[a] container for incoming documents, located in or near one's office or work area").

Goodman delivered the summons and complaint on October 23, 2008. Shortly thereafter, Stalzer placed the documents in Hermes's in-box, where they remained unnoticed for more than two months. Hermes finally learned of the lawsuit in January 2009, not by reviewing his in-box, but by being informed by a title insurance company. That Hermes manages thirty-seven companies, allows his in-box to grow to a height in excess of one foot, and does not check it frequently cannot justifiably be factored in to the question of whether service was properly completed. Once Goodman properly effected service, it had no control over the documents and cannot be penalized for what happened to the documents within WP's office.

We conclude that proper service was made upon Hermes by delivery to an assistant of his; therefore, the trial court had personal jurisdiction over WP. Accordingly, the default judgment is not void and cannot be set aside pursuant to C.R.C.P. 60(b)(3).

## C. Neither Mistake Nor Excusable Neglect Exists

WP recites generally each of the justifications listed in C.R.C.P. 60(b)(1) in support of setting aside the default judgment. Its specific justification is honest mistake by Hermes, although the justification is better described as excusable neglect. Under either rubric, we conclude that a finding of mistake or excusable neglect under C.R.C.P. 60(b)(1) is not supported by the record before this court.

Courts do not often distinguish between mistake and excusable neglect. Indeed, many cases simply decide whether or not the actions at issue constitute "[m]istake, inadvertence, surprise, or excusable neglect." However, this does not mean that the terms are synonymous. *See Klosterman v. Indus. Comm'n of Colo.*, 694 P.2d 873, 875–76 (Colo. App.1984) (rejecting the analogy to excusable neglect in C.R.C.P. 60(b) for purposes of mistake under the Workers' Compensation Act and stating that, "while considerations constituting mistake or error and excusable neglect may sometimes overlap, we do not consider them to be synonymous"). In this case, some of the acts of Hermes or Stalzer may be described as mistake, but the cause of WP's failure to respond is more fairly described as neglect by Hermes to attend to the documents on his desk. WP and

Hermes intentionally developed and implemented office procedures to handle incoming documents. Whether these practices and procedures were effective is not a matter of mistake. Rather, WP *neglected* to respond to Goodman's complaint. The only question is whether this neglect is excusable.

Excusable neglect is "a somewhat 'elastic concept.' " *People v. Wiedemer,* 852 P.2d 424, 442 n. 20 (Colo.1993) (discussing the phrase in the criminal context as used in section 16–5–402(2)(d), C.R.S. (1986)) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (discussing the use of the phrase in Fed.R.Civ.P. 6(b))).

■ Determining the existence of excusable neglect is a fact-intensive inquiry. Our precedent has identified three factors that guide whether to grant a motion for relief from a default judgment on the basis of excusable neglect:

(1) whether the neglect that resulted in entry of judgment by default was excusable;

(2) whether the moving party has alleged a meritorious claim or defense; and

(3) whether relief from the challenged order would be consistent with considerations of equity.

*Buckmiller v. Safeway Stores, Inc.,* 727 P.2d 1112, 1116 (Colo.1986) (applying *Craig v. Rider,* 651 P.2d 397, 401–02 (Colo.1982) (applying the C.R.C.P. 60(b)(1) excusable neglect analysis to the question of whether the movant demonstrated "good cause" under section 15–12–413, C.R.S. (1973), to have an order in a formal testacy proceeding modified or vacated)).

In defining excusable neglect, we have said, "A party's conduct constitutes excusable neglect when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty. Common carelessness and negligence do not amount to excusable neglect." *In re Weisbard,* 25 P.3d 24, 26 (Colo.2001) (quoting *Tyler v. Adams County Dep't of Soc. Servs.,* 697 P.2d 29, 32 (Colo.1985) (citations omitted)). The court of appeals has similarly characterized excusable neglect as involving "unforeseen circumstances which would cause a reasonably prudent person to overlook a required act in the performance of some responsibility." *Colo. Dep't of Pub. Health & Env't v. Caulk,* 969 P.2d 804, 809 (Colo.App.1998). Thus, this first factor looks to the cause of the neglect.

■ To satisfy the second factor, the asserted meritorious defense must be supported by factual allegations, not just legal conclusions. *Craig,* 651 P.2d at 403. However, the truth of the allegations need not be proven as long as they are legally sufficient. *Id.* at 404.

■ The third factor addresses the circumstances surrounding the neglect and the motion to set aside:

> [I]n determining whether rule 60(b) relief would be consistent with equitable considerations, a trial court should take into account the promptness of the moving party in filing the rule 60(b) motion, the fact of any detrimental reliance by the opposing party on the order or judgment of dismissal, and any prejudice to the opposing party if the motion were to be granted, including any impairment of that party's ability to adduce proof at trial in defense of the claim.

*Buckmiller,* 727 P.2d at 1116 (citing *Craig,* 651 P.2d at 404–05). Prejudice to the moving party by a denial of the motion is also considered. *Id.* at 1117 (noting that the trial court found that prejudice to the defendant from granting the plaintiff's motion outweighed any wrong to the plaintiff from denying her motion); *Singh v. Mortensun,* 30 P.3d 853, 856 (Colo.App.2001) (citing *Buckmiller* for the equitable consideration of "balancing the prejudice to plaintiff from granting defendant's motion against prejudice to defendant from denying the motion").

■ Whether to set aside a default judgment is at its core an equitable decision. The goal is to promote substantial justice. *Craig,* 651 P.2d at 401. The trial court must "strike a balance between the preferred rule of finality of judgments and the need to provide relief in the interests of justice in exceptional circumstances." *Se. Colo. Water Conservancy Dist. v. O'Neill,* 817 P.2d 500, 505 (Colo.1991) (internal quotations omitted);

*Canton Oil Corp. v. Dist. Ct.*, 731 P.2d 687, 694 (Colo.1987) (like its counterpart in the Federal Rules of Civil Procedure, C.R.C.P. 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done" (quoting 11 C. Wright & A. Miller & M. Kane, *Federal Practice and Procedure* § 2851 at 140 (1973))).

■ The rules for vacating or amending a judgment have developed in light of these concerns. *People v. R.L.C.*, 47 P.3d 327, 330–31 (Colo.2002). However, "[b]ecause resolution of disputes on their merits is favored, the criteria for vacating a default judgment should be liberally construed in favor of the movant, especially when the motion is promptly made." *Sumler v. Dist. Ct.*, 889 P.2d 50, 56 (Colo.1995) (internal quotation marks omitted) (citing *Craig*, 651 P.2d at 402).

As for how to consider and apply these factors, our recent decisions have concluded that while a failure to satisfy any one of these factors may result in the denial of a motion to set aside, a court must consider and weigh each of them in balance. However, the requirement of a meritorious defense has not always clearly been a factor directly related to the question of whether excusable neglect exists. Additionally, our early cases do not embrace a balancing test per se. Nevertheless, as the three-part test has developed and matured, we have determined that each factor must be weighed and considered together as a part of the question whether excusable neglect exists to satisfy C.R.C.P. 60(b)(1).

Courts have held that the mere existence of a meritorious defense by itself is not sufficient to justify vacating a judgment, a holding that suggests that this factor is not part of the excusable neglect analysis itself but rather is in addition to the C.R.C.P. 60(b)(1) requirement. *See Biella v. State Dep't of Highways*, 652 P.2d 1100, 1103 (Colo.App. 1982) (citing *Riss v. Air Rental, Inc.*, 136 Colo. 216, 315 P.2d 820 (1957)); *see also Williams v. Swanson*, 57 Fed.Appx. 784, 788 (10th Cir.2003) (holding that the requirement of a meritorious defense "is *in addition* to

the threshold showing of excusable neglect," (emphasis in original), and that upon finding no excusable neglect, the trial court was not required to address arguments as to a meritorious defense).

The meritorious defense requirement does reflect a somewhat separate concern for judicial expediency and the desire not to litigate meritless claims. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970) (observing that the judicial preference for disposition on the merits is counterbalanced by considerations of social goals, justice, and expediency; thus, a party requesting to reopen a default judgment must show a good reason for the default and a meritorious defense); *Teamsters Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir.1992) (the movant "must give the trial court reason to believe that vacating the judgment will not be an empty exercise"); *cf. Gumaer v. Bell*, 51 Colo. 473, 480–81, 119 P. 681, 683 (1911) (noting that a showing of a meritorious defense must be sufficient to demonstrate at least the possibility that a result following trial may be different). Indeed, it is difficult to imagine a case in which no meritorious defense exists but the circumstances otherwise would justify setting aside a default judgment.

Upon first considering a balancing test in *Craig*, we expressly declined to adopt it. 651 P.2d at 402. However, we remarked that "the nature of the asserted defense may shed light on the existence and degree of neglect, and possibly on the equitable considerations." *Id.* We did not reach the question of whether a trial court must hear evidence on each of the three criteria in a single proceeding. *Id.* at 402 n. 5.

Later, in *Buckmiller*, we held that the trial court abused its discretion in failing to fully consider each factor required by *Craig*. 727 P.2d at 1116–17. In that case, Buckmiller's claims were dismissed for lack of prosecution. In the motion to vacate, Buckmiller asserted excusable neglect due to her attorney's negligence and asserted that she had a meritorious claim. At hearing, the trial court did not permit testimony on the claimed excusable neglect. *Id.* at 1114–15. However, the trial court determined that the

prejudice to the defendant in its ability to defend the case outweighed the wrong the plaintiff suffered due to her attorney's negligence. *Id.* at 1115.

On review, we acknowledged *Craig's* declination of a balancing test and admonishment that a failure to satisfy any one of the criteria was sufficient to deny a motion to set aside. However, we emphasized that the preferred method is to consider all of the factors in a single hearing. *Id.* at 1116. We went on to hold that the trial court abused its discretion, finding that the record lacked any indication that the court considered the assertions of excusable neglect and a meritorious claim, or that the trial court fully addressed all of the equitable considerations. *Id.* at 1117. In dissent, Justice Erickson remarked that the majority's finding of reversible error for failure to consider each of the criteria "in effect[ ] create[d] the type of balancing test that we wisely disapproved of in *Craig.*" *Id.* at 1118 (Erickson, J., dissenting).

In a subsequent opinion authored by Justice Erickson, this court in *Sumler* stated that, "[i]n *Buckmiller,* we adopted the balancing test rejected by this court in *Craig,* and required a trial court to consider each of the *Craig* criteria." 889 P.2d at 56 n. 14. However, we still noted that a trial court may deny a motion to set aside a default judgment for failure to satisfy any one of the three factors. *Id.*

 Together, *Craig, Buckmiller,* and *Sumler* establish that these three factors constitute a balancing test and each must be considered in resolving the motion. However, this does not preclude the possibility that, in a particular circumstance, the failure to satisfy just one of these factors is so significant that it requires denial of the motion to set aside.

We recognize that, while our decisions have itemized the necessary considerations in a list of separate factors which by themselves can be a basis for denial of the motion, in application the factors are not so easily confined or separated. As we have noted before, the nature of the asserted defense may inform the other two factors. *Craig,* 651 P.2d at 402. Additionally, we have explained in other contexts involving excusable neglect

that a balancing of the equities is required in considering whether excusable neglect exists. *SL Group, LLC v. Go West Indus., Inc.,* 42 P.3d 637, 641 (Colo.2002) (addressing the use of the phrase in the water law context and citing *Wiedemer,* 852 P.2d at 442 n. 20); *Wiedemer,* 852 P.2d at 442 n. 20 (in the criminal context, adopting a balancing test and citing with approval to the balancing test adopted in *Pioneer,* 507 U.S. at 392, 395, 113 S.Ct. 1489).

Our test is not unlike the balancing test established by the United States Supreme Court. *Pioneer,* 507 U.S. at 393–95, 113 S.Ct. 1489 (analogizing in part to Fed. R.Civ.P. 60(b) to define excusable neglect in Bankruptcy Rule 9006(b)(1) and establishing a balancing test to determine whether the neglect was excusable) ("[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.").

The analysis established by the Supreme Court in essence merges our two factors of excusable neglect and equitable considerations. *Cf. id.* at 400, 113 S.Ct. 1489 (O'Connor, J., dissenting) (criticizing the majority's use of a balancing test which at the same time reviews not only the cause of the neglect, but also the consequences of the neglect). In setting forth a balancing test, the Court expressly rejected the dissent's insistence that the question of excusable neglect is a threshold matter to be determined before the full range of equitable considerations may be taken into account. *Id.* at 395 n. 14, 113 S.Ct. 1489; *see also id.* at 399, 402, 113 S.Ct. 1489 (O'Connor, J., dissenting) (making a distinction between inquiring into the causation of the failure to act and the consequences of the failure). To follow the threshold approach, according to the Court, would be inconsistent with the cases giving a more flexible meaning to "excusable neglect." *Id.* at 395 n. 14, 113 S.Ct. 1489. While our excusable neglect analysis is not identical to *Pio-*

*neer's,* our case law similarly ascribes a more flexible meaning to excusable neglect and requires joint consideration of the reasons for the neglect and the surrounding circumstances.

Here, applying our definition of excusable neglect and conducting the requisite analysis yields the determination that WP cannot demonstrate excusable neglect. With respect to the nature and cause of the failure to respond, WP's only justification is, "WP's failure to respond sooner was plainly due to an honest mistake (i.e., Mr. Hermes not looking in his in-box, containing non-urgent items, more often), rather than any bad faith or other willful misconduct by Mr. Hermes or WP generally."

Even if not willful or in bad faith, carelessness and neglect due to poor office procedures and an apparently overwhelming workload do not justify the failure to respond to the complaint. *See Biella,* 652 P.2d at 1103 (holding that carelessness of the state in losing summons and complaint amid voluminous amounts of documents served was not excusable neglect); *Johnston v. S.W. Devanney & Co.,* 719 P.2d 734, 736 (Colo.App.1986) (holding that misplacement of process papers during office move was not inadvertence or excusable neglect). The documents were placed in Hermes's office in his in-box, a reasonable place for his assistant to place documents that required his attention. From that point, WP and Hermes had no system to ensure documents were processed correctly. Neither Hermes nor anyone else checked his in-box. Hermes only learned of the default judgment more than two months later after being contacted by a title insurance company about the suit. WP's reliance on Hermes and Hermes's lack of control over his paperwork do not constitute excusable neglect. Neither being short-staffed nor handling the management duties of thirty-seven companies during a collapse of the housing market mitigates Hermes's failure here. Put simply, WP's failure to respond resulted from common carelessness and negligence, and a reasonably careful registered agent would not have neglected to find the process papers. *See* § 7–90–704(1), C.R.S. (2009) ("The registered agent of an entity is an agent authorized to receive service of any process, notice, or demand required or permitted by law to be served on the entity.").

Additionally, although WP's motion was technically timely under C.R.C.P. 60(b)(1), WP's delay in moving to set aside the default judgment after Hermes learned of it does not demonstrate diligence in rectifying the initial failure to respond. Although Hermes learned of the judgment sometime in January 2009, the motion was not filed until April 3, 2009, a delay of more than two months. *See Ehrlinger v. Parker,* 137 Colo. 514, 517–18, 327 P.2d 267, 269 (1958) (among other factors justifying denial of the motion to set aside, finding that the defendants did not diligently pursue setting aside the judgment when they waited until at least six weeks after learning the judgment had been entered). In his affidavit, Hermes stated that he initially believed that nothing could be done about the judgment but that, once he learned otherwise, he began searching for representation. Such a mistaken belief as to the legal options available to WP is not sufficient justification for the delay. *See Caulk,* 969 P.2d at 810 (finding the defendants' mistaken belief that they could not be liable both to the EPA under federal law and to the plaintiff under state law as justification for failure to respond to the complaint was not excusable neglect); 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.41[1][c][iii] ("In the context of Rule 60(b)(1) motions, ignorance of the law usually is not excusable neglect.").

WP attempts to place some of the blame for its failure to respond on Goodman, alleging that Goodman's attorney "conspicuously" failed to mention the lawsuit in an email exchange that occurred after judgment had been entered and recorded. This argument is without merit. The correspondence consisted of two emails. Early in the day, Hermes inquired of Goodman's counsel, "Is there a time that you would be available for us to discuss the Goodman contract at Lakota?" Thirty minutes later, Goodman's counsel replied, "I am in for most of the day today. Let me know when you would like to talk." It is not contested that Hermes did not respond. This conversation does no

more than attempt to arrange a time to discuss the contract at issue.

 WP also takes issue with the fact that, aside from service upon Stalzer, Goodman failed to give any indication that this suit was instituted or that a default judgment was sought and granted. By rule, notice of an application for default judgment is only required "[i]f the party against whom judgment by default is sought has appeared in the action." C.R.C.P. 55(b). WP made no appearance in the action, so notice was not required. Notably, Goodman forewarned WP in a September 18, 2008 letter to Hermes and others that it would initiate suit should WP fail to return the disputed earnest money within ten days of that letter, and the complaint was filed October 22, 2008.

Other equitable considerations do not weigh in WP's favor. Although it is not argued that Goodman will suffer any prejudice in terms of its ability to submit proof of its claims, Goodman relied upon the judgment and made significant efforts to enforce it, including recording the judgment and instituting a foreclosure action upon property subject to the recorded judgment lien. In addition, the complaint for foreclosure was filed approximately one month after Hermes learned of the judgment, a month in which Hermes could have diligently assessed the availability of relief from the judgment and sought that relief.

WP further argues that if the judgment is not set aside, unfair prejudice would result because Goodman has by default obtained a judgment in excess of $150,000, while WP has a valid breach of contract counterclaim "for multiples of that amount." Although this is a significant judgment and a potentially significant counterclaim, we do not find that these assertions tip the scale in favor of setting aside the judgment.

In sum, WP was unjustified in its neglect and carelessness; WP was not diligent in remedying the result of its neglect; and Goodman has taken significant steps in reliance on the default judgment. Even assuming that WP has a meritorious defense, the circumstances do not support a finding of excusable neglect under C.R.C.P. 60(b)(1).

## V. Conclusion

We conclude that service was proper and the trial court therefore had jurisdiction to enter a default judgment against WP. Accordingly, the default judgment is not void and cannot be set aside under C.R.C.P. 60(b)(3). We also conclude that the circumstances surrounding WP's failure to timely respond to the complaint do not amount to mistake or excusable neglect such that the default judgment can be set aside under C.R.C.P. 60(b)(1). As a result, the trial court erred in setting aside the default judgment.

We therefore make the rule to show cause absolute, direct the trial court to reinstate the default judgment, and remand the case for further proceedings consistent with this opinion, including determining whether and to what extent Goodman is entitled to attorneys' fees and costs associated with this petition and the underlying motion.