23CA2150 Hummell v Hansen 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2150
Jefferson County District Court No. 22CV30833
Honorable Ryan P. Loewer, Judge

Britton Hummell d/b/a Dream Team Colorado LLC, a Colorado limited liability
company,

Plaintiff-Appellant,

v.

Verna M. Hansen and the Verna M. Hansen Trust,

Defendants-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

LMB Partners, PLLC, Adam F. Aldrich, Denver, Colorado, for Plaintiff-Appellant

Law Offices of Gabriel Montalvo, PLLC, Gabriel Montalvo, Colorado Springs,
Colorado, for Defendants-Appellees

¶ 1     Britton Hummell,[1] a general contractor, appeals the district court's denial of his motion to set aside the default judgment entered against him and in favor of homeowner, Verna M. Hansen and the Verna M. Hansen Trust (collectively "Hansen").  We conclude that the district court erred by denying Hummell's motion because Hummell established excusable neglect.  We therefore reverse and remand with directions.

## I.     Background

¶ 2     Hansen hired Hummell to renovate the primary suite in her house.  While the renovation was underway, they noticed a water leak in the kitchen that was unrelated to the in-progress renovation.  Hummell initially estimated that fixing the kitchen leak would cost $5,000.  Hansen asked Hummell to send the kitchen repair estimate to her home insurance provider.  Hummell did so, but first conducted additional investigation into the extent of the leak and damage.  That additional investigation caused him to

---

[1] Hummell filed the complaint in this action as "Britton Hummell, d/b/a Dream Team Colorado, LLC."  No party contests Hummel's standing to pursue the subject claims or this appeal.

revise the estimate to $12,500, and he sent that revised estimate to Hansen's insurer.

¶ 3    Apparently, Hummell's submission of the revised $12,500 estimate triggered a breakdown in the relationship between the parties. Hansen hired a different contractor to finish repairing the kitchen leak. Hansen also contends that Hummell walked off the job before completing the primary suite renovation. Hummell contends that he completed the primary suite renovation and that Hansen failed to pay him what he was owed under their contract.

¶ 4    In July 2022, Hummell sued Hansen in an action that included claims for breach of contract and foreclosure of a mechanic's lien. Before Hansen answered the complaint, Hummell's counsel was allowed to withdraw, leaving Hummell unrepresented.

¶ 5    In October 2022, Hansen answered the complaint and brought eight counterclaims against Hummell, including fraud, breach of contract, insurance fraud, a spurious lien, and violations of the Colorado Consumer Protection Act (CCPA) and Colorado Construction Trust Fund statute. When Hummell failed to file a reply to the counterclaims within the required twenty-one days,

Hansen moved for entry of a clerk's default against him. Hummell filed a pro se response to that motion on November 3, 2022. In it, he told the court that he was "in between counsel" and "interviewing a new lawyer." He asked the court for "3 weeks to hire a new lawyer." Based presumably on Hummell's representations, the court denied Hansen's motion for entry of default.

¶ 6 One month later, Hummell still had not replied to Hansen's counterclaims. On December 2, 2022, Hansen renewed her motion for entry of default. Hummell failed to respond to this motion. The court granted the motion a few weeks later, entering a default on December 29, 2022, and deeming Hummell's liability admitted as to Hansen's counterclaims.

¶ 7 A few months later, on April 17, 2023, Hansen moved for entry of a default judgment. Hansen sought monetary damages in the amount that she paid the other contractor to complete the primary suite renovation, which she claimed was $44,900. Additionally, and despite failing to plead a claim for exemplary damages, she asked the court to treble the monetary damages to $134,700. She also asked for $50,000 in non-monetary damages, over $29,000 in attorney fees and costs, and pre and postjudgment interest. Less

than an hour after the motion was filed, the district court summarily granted it, entering judgment using the form submitted by Hansen's counsel, which the court did not modify or support with factual findings or legal analysis.

¶ 8 The next month, on May 31, 2023, Hummell resurfaced. He filed a pro se motion to set aside the default judgment, explaining that he had been in Texas working for the winter and hadn't been receiving mail sent to his Colorado home, which was the only address he had provided to the court. Hummell asserted excusable neglect and contended that he had completed the primary suite renovation and hadn't been paid. He later renewed his motion to set aside the judgment, this time represented by counsel. The renewed motion laid out Hummell's excusable neglect argument in more detail, including explaining his defenses to Hansen's counterclaims and arguing that trebling Hansen's economic damages was error. The district court denied the motion without explanation or analysis.

¶ 9      Hummell appeals, arguing that he established excusable neglect, and the court therefore erred by denying his motion to set aside the judgment.[2] We agree with Hummell that the court erred.

## II.     The District Court Abused its Discretion

¶ 10      A court may set aside a default judgment in accordance with C.R.C.P. 60(b). C.R.C.P. 55(c). As relevant here, Rule 60(b)(1) allows a court to consider setting aside a judgment if the moving party demonstrates excusable neglect for failing to previously respond. Under this rule, the burden is on the moving party to establish excusable neglect by clear and convincing evidence. *McMichael v. Encompass PAHS Rehab. Hosp., LLC*, 2023 CO 2, ¶ 13. We review a court's determination about whether a party has met this burden for an abuse of discretion, meaning we will reverse only if the ruling was manifestly arbitrary, unreasonable, or unfair. *Id.* at ¶¶ 12, 15.

---

[2] Hummell also appealed the judgment itself. But that part of the appeal was dismissed as untimely. We therefore limit our review to the district court's denial of his motion to set aside the judgment.

5

## A.  Setting Aside Default Judgments for Excusable Neglect

¶ 11    Default judgments are disfavored and "should be imposed only in extreme circumstances." *Id.* at ¶ 11 (quoting *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001)).  Consequently, we liberally construe the criteria for setting aside a default judgment in favor of the movant.  *See Goodman Assocs., LLC v. WP Mountain Properties, LLC*, 222 P.3d 310, 320 (Colo. 2010).

¶ 12    Our supreme court has identified three factors that "guide" a court's decision whether to set aside a default judgment based on excusable neglect: (1) whether the neglect that led to the default judgment was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the judgment is consistent with considerations of equity.  *Id.* at 319.  These three factors constitute a balancing test, not boxes to be checked, and each factor must be considered in relation to the others when resolving an excusable neglect argument.  *Id.* at 321.  The failure to satisfy one of the three guiding factors is not *necessarily* fatal to a claim of excusable neglect.  That said, such a failure can be fatal depending on the particular facts of the case.  *Id.*

6

¶ 13　That the three guiding factors constitute a balancing test rather than a checklist of prerequisites leads to a seemingly paradoxical possibility: a party may be able to carry its burden to establish excusable neglect overall even if, under factor one, the neglect that led to the default judgment was not excusable. This possibility exists because whether to set aside a default judgment is "at its core an equitable decision" where the "goal is to promote substantial justice." *Id.* at 319.

¶ 14　Indeed, our supreme court has signaled its acceptance of this possibility. In *Goodman,* the court noted the United States Supreme Court's refusal to treat factor one as a threshold determination that must be satisfied before reaching factors two and three. *Id.* at 321 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 n.14 (1993)). Our supreme court explained that although Colorado's excusable neglect standards were not identical to the Supreme Court's, Colorado's standard "similarly ascribes a more flexible meaning to excusable neglect and requires joint consideration of the reasons for the neglect and the surrounding circumstances." *Id.* at 322. Thus, we read *Goodman* as leaving open the possibility that a party could

7

carry its overall excusable neglect burden even if the neglect that led to the default judgment was not excusable.

### B.     Hummell Established Excusable Neglect

¶ 15     We now turn to whether Hummell established excusable neglect here, using the three factors described above as our "guide," and with the aim to make this "equitable decision" in a way that "promote[s] substantial justice." *Id.* at 319.  We conclude that Hummell carried his burden to establish excusable neglect despite the fact that his neglect that led to the default judgment was not excusable.

¶ 16     Under factor one, the neglect that led to the default judgment is excusable if a reasonably careful person in the same situation would have acted with the same neglect as the movant.  *See McMichael,* ¶ 14.  Hummell's failure to respond to the counterclaims was not excusable under this definition.  After he failed to answer the counterclaims within three weeks as required by Rule 12(a)(4) and Hansen had moved for entry of default, Hummell asked the court, on November 3, 2022, for an additional three weeks to hire a lawyer.  The court effectively granted him that additional three weeks.  But Hummell's next filing in the case occurred on May 31,

2023, more than five months later. Hummell knew in November 2022 that if he did not respond to Hansen's counterclaims in the extra three weeks he requested, he risked a default judgment. A reasonably careful person in this situation would not effectively disappear from the case for the next five-plus months.

¶ 17    Moving to factor two, we conclude that Hummell presented a meritorious defense to the counterclaims. To qualify as meritorious, Hummell's defenses must have been legally sufficient and supported by factual allegations, but he did not need to prove those factual allegations. *See Goodman*, 222 P.3d at 319. At the outset, we note that Hansen has conceded a meritorious defense to two claims. In her response to Hummell's motion to set aside, Hansen conceded that "a mechanic's lien cannot be dismissed via the spurious lien documents/spurious lien statute" as alleged in her spurious lien counterclaim. And she concedes on appeal that her CCPA claim "is inapplicable." Hansen also concedes that both the award of exemplary damages and the associated prejudgment interest award were not legally supported.

¶ 18    As for the other counterclaims, as part of his motion, Hummell filed an affidavit and screenshots of text messages between him and

Hansen. His affidavit said that he submitted the revised $12,500 estimate for the kitchen repair to Hansen's insurer at her direction, and that the insurer paid her, not him, that full amount. The text messages can be read to support that assertion.

¶ 19 Hummell also asserted in the affidavit that he completed the scope of work under the contract for the primary suite and paid for all labor and materials necessary to do so. These allegations constituted potentially meritorious defenses to the breach of contract and fraud-based counterclaims, as well as the counterclaim based on the Colorado Construction Trust Fund statute. Thus, Hummell has asserted potentially meritorious defenses to all Hansen's counterclaims (though we express no opinion about whether those defenses would prevail).

¶ 20 Turning to factor three, equitable considerations strongly supported granting Hummell's motion to set aside. Hummell argued in his motion that he would be unfairly prejudiced if the judgment stood because the district court improperly trebled Hansen's economic damages and the award of $50,000 in non-economic damages was not grounded in any evidence or factual findings. *See Goodman*, 222 P.3d at 323 (the judgment's unfairness

to the moving party is an appropriate equitable consideration).  On appeal, *Hansen concedes* that the district court should not have trebled the economic damages because she failed to plead a counterclaim for exemplary damages — an error that resulted in an $89,800 windfall to her.

¶ 21     What's more, it appears from the record that the district court failed to follow the required procedure in determining the amount of economic and non-economic damages in the first place.  After an entry of default, a court must hold a hearing on damages unless the action is "for a liquidated amount or a sum calculable by mathematical processes alone."  *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 679 (Colo. 1987).  If the damages are unliquidated a hearing is required.  *Id.*  And at that hearing "the defaulting defendant must have 'the opportunity to participate fully,'" which includes "a right 'to cross-examine witnesses and to present mitigating evidence.'"  *Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M, ¶ 24 (quoting *Kwik Way Stores*, 745 P.2d at 679).  There is no indication in the record that Hansen's economic or non-economic damages were liquidated.  Therefore, the district court should have held a hearing and given Hummell the opportunity to

11

contest those amounts instead of summarily granting Hansen the damages she requested less than an hour after she requested them.

¶ 22     Other equitable considerations we are directed to account for include the timeliness of Hummell's motion, Hansen's detrimental reliance on the judgment, and any prejudice Hansen would suffer if the motion were granted. *See McMichael*, ¶ 17. Hummell's motion was filed well within the 182 days prescribed by Rule 60(b). And it does not appear from the record, nor does Hansen argue on appeal, that she has detrimentally relied on the judgment or would be prejudiced if it were set aside.

¶ 23     Having analyzed the three factors, we return to the overarching principles that guide our inquiry. We are reminded that the question before us is an equitable one whose goal is to do substantial justice. *See Goodman*, 222 P.3d at 319. And we are mindful that we must liberally construe the factors in Hummell's favor because "[d]isposing of a case on procedural grounds rather than on the merits warrants serious caution and should only occur in the rarest of occasions." *McMichael*, ¶ 11.

¶ 24     In light of these guiding principles, we conclude that the district court abused its discretion by denying Hummell's motion to

set aside the default judgment. True, Hummell's neglect that led to the default judgment was not excusable. But he presented meritorious defenses to Hansen's counterclaims. And the equities heavily favor setting aside the judgment, given the district court's failure to hold a damages hearing and Hansen's concession that the court erred by trebling the damages at her request.

¶ 25 We find further support for our conclusion that denying Hummell's motion was manifestly arbitrary and unreasonable in the summary nature of the denial. The district court provided no explanation for its ruling and there was no evidence that it considered the three factors or general principles discussed in this opinion. Our supreme court has held that a court abuses its discretion by failing to consider these factors and principles when ruling on a motion to set aside a default judgment. *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1115-17 (Colo. 1986). We follow that holding here.

¶ 26 In light of this conclusion, we deny Hansen's request for attorney fees.

## C.    The Clerk's Entry of Default

¶ 27    Having concluded that the default judgment must be set aside, we are faced with the question of what to do, if anything, with the clerk's entry of default.  In his motion to set aside in the district court and his opening brief, Hummell requested that the clerk's entry of default also be set aside.  But his only argument in support of setting aside the clerk's default was the excusable neglect argument we analyzed above.  Apparently, Hummell assumes that reversal of the default judgment necessarily reverses the clerk's default.  But this assumption seems incorrect because our civil rules set out different legal standards for setting aside default judgments and clerk's entries of defaults.

¶ 28    Rule 55(c) provides that a court may set aside a clerk's entry of default "[f]or good cause shown."  In contrast, and as discussed above, a default judgment may be set aside for excusable neglect.  C.R.C.P. 55(c), 60(b)(1).  Hummell presents a persuasive and well-supported argument that he established excusable neglect to set aside the default judgment.  But he presents no argument at all about whether he has shown good cause to set aside the clerk's entry of default.  Nor does he present any argument about why

14

setting aside the default judgment necessarily requires setting aside the clerk's entry of default.

¶ 29     Under these circumstances, we conclude that Hummell has failed to properly challenge on appeal the clerk's entry of default. *See Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.,* 2017 CO 69, ¶ 40 (declining to address argument presented without supporting argument or authority).  We therefore decline to address it, expressing no opinion about whether the clerk's entry of default should remain in place or whether the district court is bound by it on remand.

### III.   Disposition

¶ 30     The order denying Hummell's motion to set aside the default judgment is reversed and the case is remanded to the district court with instructions to grant the motion and conduct further proceedings consistent with this opinion.

JUDGE TOW and JUDGE SCHUTZ concur.