Colorado Supreme Court Opinions || February 29, 2016

Colorado Supreme Court -- February 29, 2016
2016 CO 13. No. 13SC902. Sebastian v. Douglas County.

 The Supreme Court of the State of Colorado 
 2 East 14th Avenue • Denver, Colorado 80203

 2016 CO 13

 Supreme Court Case No. 13SC902 
 Certiorari to the Colorado Court of Appeals 
 Court of Appeals Case No. 12CA1112

 Petitioner: 
 Fabian Sebastian,
 v.
 Respondents:
 Douglas County, Colorado; Douglas County Sheriff’s Office; David A. Weaver, Douglas
 County Sheriff; Greg A. Black, Douglas County Sheriff’s Deputy.

 Judgment Affirmed 
 en banc 
 February 29, 2016

 Attorneys for Petitioner:
 Rathod Mohamedbhai LLC
 Matthew J. Cron Arash Jahanian
 Qusair Mohamedbhai

 
 Denver, CO

 The Law Offices of Sandomire & Schwartz Andrew Sandomire
 Eric V. Field

 
 Denver, CO

 Attorneys for Respondents:
 Douglas County Attorney’s Office
 Kelly Dunnaway

 
 Castle Rock, CO

 JUSTICE EID delivered the Opinion of the Court.
 JUSTICE HOOD dissents, and JUSTICE MÁRQUEZ joins in the dissent. JUSTICE GABRIEL does not participate.

  

 ¶1 Petitioner Fabian Sebastian filed an action under 42 U.S.C. § 1983 (2014) against respondents Douglas County, Colorado, the Douglas County Sheriff’s Office, Douglas County Sheriff David A. Weaver, and Sheriff’s Deputy Greg A. Black (“the County”), alleging that his Fourth Amendment right to be free from unreasonable seizures was violated when he was attacked by a K–9 police dog. More specifically, he alleged that an intentional seizure occurred when the dog, released by the deputy to seize two suspects who had fled a vehicle and climbed over a fence, ran back to the vehicle and attacked him while he was sitting with his hands up in the back seat.

 
 ¶2 After Sebastian failed to respond to the County’s motion to dismiss within the time limit, the trial court dismissed his claim. Sebastian then moved to set aside the judgment under C.R.C.P. 60(b)(1), alleging excusable neglect. Under Goodman Assocs., LLC v. Mountain Properties, LLC, a trial court must consider three factors when determining whether to grant a Rule 60(b)(1) motion for excusable neglect: “(1) whether the neglect that resulted in entry of judgment by default was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged order would be consistent with considerations of equity.” 222 P.3d 310, 319 (Colo. 2010) (citing Buckmiller v. Safeway Stores, Inc., 727 P.2d 1112, 1116 (Colo. 1986)). The trial court denied Sebastian’s motion on the ground that he had failed to demonstrate excusable neglect under the first factor.

 ¶3 In the initial appeal of the case, the court of appeals determined that although the trial court properly concluded that there was no excusable neglect under the first factor, it had failed to conduct a full three-factor analysis under Goodman; accordingly, the appellate court reversed and remanded the case for such an analysis. On remand, the trial court once again denied the motion, determining that Sebastian failed to demonstrate a meritorious claim under the second factor, and failed to show that the equities weighed in his favor under the third factor. This time the court of appeals affirmed the trial court, reiterating its earlier conclusion that Sebastian failed to show excusable neglect under the first factor, and further concluding that the trial court properly determined that Sebastian failed to plead a meritorious claim.

 ¶4 Relevant here, the appellate court concluded that Sebastian failed to plead an intentional seizure as required by Brower v. Cty. of Inyo, 489 U.S. 593, 596–97 (1989). The court held that while an intentional seizure occurs when a K–9 is released and attacks anyone in the surrounding “space,” Sebastian was not in that “space” because the K–9 had to turn around and run back to the vehicle. Sebastian v. Douglas Cty., 2013 COA 132, ¶ 28, ___ P.3d ___. The court concluded that because Sebastian failed to meet the first and second Goodman factors, the trial court properly denied his Rule 60(b)(1) motion. Id. at ¶ 36. We granted Sebastian’s certiorari petition to consider the court of appeals’ conclusion that he did not allege a meritorious claim.

 ¶5 We affirm the court of appeals, but on narrower grounds. We decline to adopt the appellate court’s “space” analysis, and instead hold that Sebastian failed to allege a meritorious claim because his allegations regarding an intentional seizure consist of only legal conclusions. We remand this case for further proceedings consistent with this opinion.

  I.

 ¶6 According to Sebastian’s complaint, he was a passenger in the back seat of a car as it pulled into a parking lot adjoining James G. Toepfer Park in Douglas County. The driver of the car picked up two boys from the parking lot. Because of a disturbance in the park, the driver maneuvered the car off the parking lot and proceeded southbound on Venneford Ranch Road. The group was stopped by several deputies from the Douglas County Sheriff’s Department, including Deputy Greg Black. The car pulled over to the curb, and the passengers were ordered to put their hands in the air. Sebastian complied with this order.

 ¶7 At this point, the two boys who had recently become passengers in the vehicle ran from the vehicle and jumped over a fence approximately ten feet to the right of the vehicle. Deputy Black released a “find and bite” K–9 police dog, and directed the K–9 to chase the two boys running away. The K–9 ran to the fence, but reached it only after the two had escaped over the fence. The K–9 then turned around, ran back to the vehicle, and attacked Sebastian, who was still seated in the back seat with his hands up. Deputy Black and two other deputies had to pull the K–9 off Sebastian. Sebastian suffered injuries to his left upper arm, elbow, and forearm.

 ¶8 Sebastian first filed a complaint in June 2009, and amended his complaint on October 7, 2009. The County filed a motion to dismiss pursuant to C.R.C.P. 12(b)(5) on November 20, 2009, claiming that (1) Sebastian had not set out facts which would warrant relief under section 1983, (2) Sebastian’s claims were barred by qualified immunity, and (3) Sebastian’s state law claims of negligence and outrageous conduct were barred by the Colorado Governmental Immunity Act, §§ 24-10-101 to -120, C.R.S. (2015).

 ¶9 Sebastian filed a motion for extension of time on December 14, 2009. In this motion, Sebastian asked for a two-week extension, but requested the due date be moved to December 22, 2009, only one week after the initial deadline for a motion to dismiss. Sebastian failed to respond within either period, and filed his response to Douglas County’s motion on January 3, 2010—after the district court had already dismissed his complaint under C.R.C.P. 121, § 1-15(3) for failing to file a responsive brief, and thereby confessing to Douglas County’s motion.

 ¶10 On January 26, 2010, Sebastian filed a motion under C.R.C.P. 60(b)(1), stating that (1) his counsel had missed the filing deadline due to the paralegal in the counsel’s office making an excusable mistake1 in drafting the order, and that the three-day rule of C.R.C.P. 6(e)2 extended the deadline to Monday, January 4; (2) although his state law claims should be dismissed, his complaint adequately alleged a violation of his Fourth and Fourteenth Amendment rights by Deputy Black under section 1983; and (3) there would be no prejudice to Deputy Black if relief was granted to Sebastian under Rule 60(b)(1). Sebastian also argued that he would be prejudiced if he were unable to pursue his claim.

 ¶11 The trial court denied Sebastian’s motion on March 10, 2010, finding that Industrial Claim Appeals Office v. Zarlingo, 57 P.3d 736, 737–38 (Colo. 2002), barred Sebastian’s argument that Rule 6(e) extended the due date to January 4, that equitable considerations did not weigh in favor of Sebastian, and that Sebastian had been “dilatory” in pursuing the matter. The trial court did not consider any other factors.

 ¶12 The court of appeals reversed, finding that the trial court did not complete a full analysis of the three-factor inquiry of Rule 60(b)(1) under Goodman, which requires a trial court to analyze “(1) whether the neglect that resulted in the entry of the judgment was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged judgment would be consistent with considerations of equity.” Sebastian v. Douglas Cty., No. 10CA0660, slip op. at 6 (Colo. App. Apr. 14, 2011) (citing 222 P.3d at 319, 321). The court of appeals concluded that although the trial court was within its discretion to find that the cause of the neglect— counsel’s misinterpretation of the three-day rule of Rule 6(e)—was not excusable, “whether excusable neglect ultimately justifies setting aside a judgment is a fundamentally broader, equity-based determination.” Id. at 7–8. Thus, the court of appeals remanded the case to “reconsider plaintiff’s Rule 60(b) motion and to enter new findings and conclusions in conformity with the requirements of Goodman.” Id. at 11.

 ¶13 On remand, the trial court again denied Sebastian’s Rule 60(b)(1) motion. As to the first factor, the trial court again found that Sebastian failed to establish excusable neglect. Regarding the second factor, whether the moving party has alleged a meritorious claim, the district court found that Sebastian had failed to state a claim under section 1983. Taking the allegations as true, the trial court found that Sebastian did not allege a meritorious claim under the Fourth Amendment, as he was not seized through a “governmental termination of freedom of movement through means intentionally applied” under Brower, 489 U.S. at 597. According to the trial court, Sebastian’s amended complaint alleged only the K–9’s “failure to distinguish” between the fleeing suspects and the victim—an allegation of negligence, not of intentional seizure. Finally, the trial court found that relief from the order would be inconsistent with notions of equity on the grounds that Sebastian’s failure to follow deadlines impaired the court’s ability to manage its docket, and the long period of delay after the incident would cause prejudice to the defendant.

 ¶14 The court of appeals affirmed the district court’s judgment. It began by reiterating its earlier conclusion regarding the first Goodman factor—namely, that Sebastian’s neglect in not filing a responsive brief in time was “not excusable.” Sebastian, ¶ 15. The court of appeals then went on to analyze the second prong of Goodman, and found that Sebastian had not asserted a meritorious 42 U.S.C. § 1983 claim because he had not asserted an actionable intentional seizure. Id. at ¶ 29. The court held that to plead a violation of his Fourth Amendment right against unreasonable searches and seizures, Sebastian needed to plead that he had “been seiz[ed] by means intentionally applied by a government actor.” Id. at ¶ 21 (alteration in original) (quoting Brower, 489 U.S. at 596–97). Relying on Rodriguez v. Cty. ofFresno, 819 F. Supp. 2d 937, 947 (E.D. Cal. 2011), Vathekan v. Prince George’s Cty., 154 F.3d 173, 176, 178 (4th Cir. 1998), and Brown v. Whitman, 651 F. Supp. 2d 1216, 1225 (D. Colo. 2009), the court adopted a rule that an officer who releases a dog intends to seize anyone in the “space” in which the dog was released. Id. at ¶¶ 25–27. The court concluded, however, that because Sebastian’s amended complaint alleged that the dog had to turn back to focus on him once the two boys had fled over the fence, he “was not in the direction (or ‘space’) to which the dog had been released,” and therefore an intentional seizure had not been alleged. Id. at ¶¶ 28, 29. Accordingly, Sebastian failed to allege a meritorious claim. Id. at ¶ 36.

 ¶15 Finally, the court of appeals analyzed the third Goodman factor, whether relief from the challenged order would be consistent with considerations of equity. The court noted that the district court did not comply as fully as it might have with its previous mandate regarding the making of findings as to this factor. Id. at ¶ 34. However, the court noted that because the first and second factors weighed against granting relief, it could not “conclude that the district court’s decision refusing to vacate the judgment of dismissal was manifestly arbitrary, unreasonable, or unfair, and, thus, an abuse of discretion.” Id. at ¶ 36.

 ¶16 Sebastian petitioned this court to review the issue of whether the court of appeals erroneously concluded that he had not been seized for purposes of the Fourth Amendment.3

 II.

 ¶17 Three factors guide a trial court’s consideration of a motion to set aside a default judgment for “excusable neglect” under Rule 60(b)(1): “(1) whether the neglect that resulted in entry of judgment by default was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged order would be consistent with considerations of equity.” Goodman, 222 P.3d at 319 (citing Buckmiller, 727 P.2d at 1116). All three factors must “be weighed and considered together as a part of the question whether excusable neglect exists.” Id. at 320. However, the “failure to satisfy just one of these factors [may be] so significant that it requires denial of the motion.” Id. at 321.

 ¶18 This weighing process is a matter within the trial court’s discretion, and thus we review the denial of relief under Rule 60(b)(1) for an abuse of discretion. Id. at 314. Even if an appellate court might disagree with the trial court’s disposition of a motion, it must respect the decision unless the movant proves that the trial court’s judgment was “manifestly arbitrary, unreasonable, or unfair.” Id.

 ¶19 This case comes before us in an unusual procedural posture. As the court of appeals concluded, in an aspect of the case not challenged here, Sebastian’s failure to respond to Douglas County’s motion to dismiss under Rule 12(b)(5) cannot be deemed “excusable” under the first factor. Sebastian, ¶ 15. As to the third factor, the court of appeals decided not to consider his argument that equity weighed in his favor because it concluded that he failed to state a meritorious claim, the second factor. Id. at ¶ 36. Before us, Sebastian does not argue that the equities favor him, presumably believing that consideration of the trial court’s treatment of the third factor would be for the court of appeals on remand if he is successful in his challenge regarding the meritorious claim factor. Therefore, the only issue before us is the trial court’s consideration of the meritorious claim factor.

 ¶20 Given this unusual procedural posture, the parties disagree with regard to what standard of review should apply to our consideration of the trial court’s application of the second factor. The County argues that we should apply an abuse of discretion standard, relying on the standard of review, discussed above, that applies to a trial court’s ultimate conclusion to deny the movant’s Rule 60(b)(1) motion. Sebastian, on the other hand, argues that we should apply a de novo standard of review, reasoning that consideration of whether a plaintiff has alleged a meritorious claim is a legal issue. Neither side draws our attention to any precedent that answers this particular question. We need not resolve this question in this case, however, because we conclude that the trial court, under any standard of review, properly determined that Sebastian has not alleged a meritorious claim.

 ¶21 In determining whether a movant has alleged a meritorious claim, we look to the pleadings. Craig v. Rider, 651 P.2d 397, 403 (Colo. 1982) (“[F]actual support [of the meritorious claim] should be in the form of a tendered pleading.”). We examine the factual allegations contained in the pleadings, not their “legal conclusions.” Goodman, 222 P.3d at 319. Here, we examine the allegations made in Sebastian’s amended complaint.

 ¶22 Sebastian alleged that Deputy Black “directed the K–9 to give chase” after the two boys who had fled the vehicle. The boys, however, climbed over a fence that was about ten feet away. At that point, the K–9 “made no effort to get over the structure and find the boys but turned and saw [Sebastian] seated in the back seat of his friend’s car with his hands up.” Next, “having failed to apprehend the boys who were running away, [the K–9] turned its attention to [Sebastian] . . . and attacked [him].” In his first claim for relief alleging excessive force, Sebastian states that by “directing the dog to subdue the occupants of the car without distinguishing those fleeing from those remaining in the vehicle Defendant Deputy Black intentionally . . . seized [Sebastian’s] person” in violation of his Fourth Amendment rights.

 ¶23 In Brower, the U.S. Supreme Court held that under the Fourth Amendment, a section 1983 plaintiff must show, as a threshold matter, that he has been “seiz[ed]” by “means intentionally applied” by the government. 489 U.S. at 596–97. The Court further elaborated that “a seizure occurs even when an unintended person or thing is the object of the detention or taking, see Hill v. California, 401 U.S. 797, 802–05 (1971); cf. Maryland v. Garrison, 480 U.S. 79, 85–89 (1987), but the detention or taking itself must be willful.” Id. at 596 (citations shortened). According to the Court, the “Fourth Amendment addresses misuse of power . . . not the accidental effects of otherwise lawful government conduct.” Id. (noting further that the writs of assistance to which the Fourth Amendment was directed “did not involve unintended consequences of government action”). In such a situation, it is “likely that a tort has occurred, but not a violation of the Fourth Amendment.” Id.; see also Apodaca v. Rio Arriba Cty. Sheriff’s Dep’t, 905 F.2d 1445, 1447 (10th Cir. 1990) (“[O]ne seized unintentionally does not have a constitutional complaint.”). As applied here, the question is whether Sebastian’s amended complaint sufficiently alleged an intentional seizure. We find that it did not.

 ¶24 Sebastian alleged only that Deputy Black “directed the K–9 to give chase” after the fleeing boys. The remainder of the allegations focus on the K–9’s conduct—for example, the allegation that “[t]he dog, having failed to apprehend the boys who were running away, turned its attention to” Sebastian. Sebastian’s single allegation regarding Deputy Black does not amount to an allegation that the seizure here was the product of “means intentionally applied” under Brower.

 ¶25 Sebastian’s first claim for relief—that “[b]y directing the dog to subdue the occupants of the car without distinguishing those fleeing from those remaining in the vehicle,” Deputy Black intentionally seized him—provides no further assistance. This allegation is a “legal conclusion,” which we are to disregard. Goodman, 222 P.3d at 319. We also note that such a conclusion is belied by the factual allegations. As the trial court observed, it was the K–9 who “failed to distinguish” between those fleeing and those in the car, not Deputy Black, who, as alleged by Sebastian, “directed the K–9 to give chase” after the fleeing boys. Sebastian, in his brief to us, adopts the same interpretation, alleging that Deputy Black “did not demonstrate [an appropriate] level of care in deploying his K–9, which was unable to discriminate between suspects and innocent parties.”

 ¶26 Because Sebastian asserts only a legal conclusion regarding an intentional seizure, we hold that he failed to allege a meritorious claim under the Fourth Amendment for purposes of Rule 60(b)(1).

 ¶27 Sebastian argues that his allegation that Deputy Black intentionally released the K–9 to seize the fleeing boys describes sufficiently “willful” conduct to be a meritorious intentional seizure claim. According to Sebastian, because a K–9, once deployed, cannot distinguish between suspects and non-suspects, anyone bitten within the “space” in which the K–9 is released is subject to an intentional seizure. He argues that because he alleged that the fence was ten feet from the vehicle, he has adequately alleged that the K–9 was released within the relevant “space.” The court of appeals essentially adopted this underlying reasoning, but concluded that, because the dog was deployed away from the vehicle and had to turn back to focus on Sebastian, Sebastian was not within the “space” of the dog’s release. Sebastian, ¶ 28. We decline to adopt this rationale.

 ¶28 The “space” terminology comes from Rodriguez v. City of Fresno, 819 F. Supp. 2d 937, 947 (E.D. Cal. 2011), which determined that “when officers intentionally deploy a dog, which is incapable of discriminating suspects from bystanders and is trained to bite whoever it encounters, the officers effectively intend to seize anyone in the space where the dog was deployed.” Importantly, however, Rodriguez involved a police bullet that hit a bystander, not a K–9, and the court held that the plaintiff failed to allege an intentional seizure because the plaintiff’s “use of the word ‘intentional’ [wa]s conclusory in light of the facts proffered” in that case. Id. at 948.

 ¶29    Moreover, the primary case upon which Rodriguez relied for the “space” terminology addressed a situation not at issue here—that is, a case of mistaken identity. In Vathekan v. Prince George’s Cty., 154 F.3d 173, 178 (4th Cir. 1998), a police officer released a K–9 into a home in search of a burglar, giving the command, “Find him!” The court observed that it was “undisputed that once that command was given, the dog would bite anyone it found. In other words, a police dog cannot discriminate between a criminal and an innocent person.” Id. But the court went further to examine the officer’s intent in releasing the K–9. As the court described it, the officer “knew there was a ‘human presence’ behind the interior door . . . [and] believed at that time that the person behind that door might have been a burglar.” Id. Thus, “[b]y allowing the dog to pass through the interior door, [the officer] intended that the dog find and bite that  person.” Id. This situation constituted an intentional seizure under Brower, the court concluded, as the officer “intended the dog to seize [the plaintiff] because he thought she might be a burglar . . . even though she turned out to be innocent.” Id. Indeed, the Brower Court cited Hill for its example of a “willful” seizure, a case that involved the intentional arrest of a man who turned out to be someone other than the suspect. Id.  (citing Hill, 401 U.S. at 802–05);4 see also Brown, 651 F. Supp. 2d at 1225 (finding an intentional seizure where officer released dog into the plaintiff’s backyard “to locate any suspects hiding there”).

 ¶30 At most, then, Vathekan stands for the proposition that an intentional seizure occurs when a police officer intentionally releases a K–9 to apprehend a suspect, even when that person turns out to be an innocent bystander. It does not stand for the proposition that Sebastian advances, namely, that an intentional seizure occurs whenever an officer intentionally releases a K–9 in a particular “space” and the K–9 eventually apprehends someone in that “space.”

 ¶31 We also note that cases such as this one are highly fact intensive and do not lend themselves to a general rule. In this case, however, there has been no factual development of any kind regarding Deputy Black’s intention, the physical location of the incident, the K–9’s training, the behavior of K–9s in general, or, for that matter, any issue raised in this case. Instead, we are left to examine the amended complaint, which, as noted above, includes nothing but a legal conclusion regarding an intentional seizure. Accordingly, we hold that, based on his amended complaint, Sebastian failed to allege an intentional seizure and therefore failed to allege a meritorious claim under Goodman. On this narrow ground, we affirm the court of appeals.

 III.

 ¶32 For the reasons stated above, we affirm the court of appeals’ decision. JUSTICE HOOD dissents, and JUSTICE MÁRQUEZ joins in the dissent.

 [1] Although Sebastian’s motion and notice of appeal (May 24, 2012) phrased his failure to respond as both “excusable neglect” and “mistake or inadvertence,” it has been treated throughout this litigation as an allegation of “excusable neglect,” or occasionally “excusable error” under Rule 60(b)(1), rather than “mistake.”

 [2] At the time, Rule 6(e) provided that “[u]nless otherwise specifically ordered, whenever a party must or may act within a prescribed period after service is made under C.R.C.P. 5(b)(2)(B), (C), or (D), three calendar days shall be added after the prescribed period would expire under the rule that defines the length of the prescribed period.” C.R.C.P. 6 (2010). That rule has since been repealed. See C.R.C.P. 6 (2016).

 [3] We granted certiorari on the following question:

 
 Whether the government’s willful use of a police dog that turned and attacked a nearby non-resisting untargeted suspect was a “seizure” achieved “through means intentionally applied.”

 [4] The Brower Court also included a cf. cite to Garrison, which involved a warrant that, seen “[w]ith the benefit of hindsight,” described the place to be searched in terms “broader than appropriate.” 480 U.S. at 85.

  

 JUSTICE HOOD, dissenting.

 ¶33 We granted certiorari in this case on the following question (which we reframed): “Whether the government’s willful use of a police dog that turned and attacked a nearby non-resisting untargeted suspect was a ‘seizure’ achieved ‘through means intentionally applied.’” The majority purports to narrowly resolve this case but offers up a broad proposition instead. After exploring the procedural setting in which the question we actually took emerged, it essentially holds that an actionable seizure under 42 U.S.C. § 1983 (2014) occurs only when a K-9 “find and bite” dog manages to find and bite a specifically targeted person—namely the precise person (or persons) at whom the handler intended to direct the dog. But it is not the handler’s intention about precisely whom the dog should find and bite that counts. Rather, under Brower v. County of Inyo, 489 U.S. 593, 595–98 (1989), there is a seizure whenever the government intentionally deploys an instrumentality to terminate a person’s freedom of movement and, by the chosen means, a person’s freedom of movement is actually terminated. Under this test, Sebastian was seized. Because the majority’s conclusion misapprehends the relevant intent for determining whether a seizure occurred, I respectfully dissent.

 ¶34 It is unquestionably true that a plaintiff has no cognizable Fourth Amendment seizure claim unless “there is a governmental termination of freedom of movement through means intentionally applied.” Id. at 596–97 (emphasis in original). In other words, violation of the Fourth Amendment requires a state actor to intentionally acquire physical control of a person. Id. at 596.

 ¶35 The test for intent in this context is objective and is satisfied when any person is stopped by an instrumentality set in motion or put in place in order to achieve a seizure. Id. at 596, 599. Brower involved a police roadblock—an eighteen-wheeler set up around the bend of a highway—intended to stop the fleeing suspect Brower. Id. at 594. Brower was killed when the car he was driving crashed into the barrier, id., and the U.S. Supreme Court unanimously agreed that he was “seized,” id. at 599; id. at 600 (Stevens, J., concurring in the judgment). The Court explained that the police employed the roadblock to stop Brower and that the “very instrumentality” they put in place accomplished that purpose. Id. at 599 (majority opinion).

 ¶36 The majority’s analysis today suggests that if another driver had smashed into the barrier he would not have been seized because the police only meant to target Brower. But Justice Scalia’s majority opinion was explicit: “A seizure occurs even when an unintended person or thing is the object of the detention or taking” so long as the detention or taking is “willful.” Id. at 596. Therefore, the capture of an innocent bystander is a seizure as long as the police (1) acted through means intentionally applied and (2) desired for a seizure, any seizure, to occur. See id. at 596–97.

 ¶37 The majority finds Sebastian’s allegation to be an inadequate legal conclusion because ultimately it was the dog who failed to distinguish between those who fled and Sebastian who stayed. See maj. op. ¶ 25. But blaming the dog seems an odd way to resolve the matter when it was law enforcement who made the decision to deploy the dog. This brings to mind the adage that it’s a poor craftsman who blames his tools. Surely, law enforcement has sufficient accountability for the inherent characteristics—the nature—of the tool it decided to use here that this pleading is facially adequate, even as viewed through the prism of C.R.C.P. 60(b)(1), as the plaintiff struggles to resuscitate his case.

 ¶38 When police deploy a find and bite dog, they do so realizing that the dog might choose to deviate from the intended target. Careful deployment can make it more likely that the dog will bite only the specific target, though, in the end, even a well-trained dog remains an autonomous creature capable of acting on its independent intelligence. In this sense, dogs are radically different from other tools police use to subdue recalcitrant suspects. A nightstick has no mind of its own. And projectiles generally go where they’re aimed. But dogs can stray.

 ¶39 Recognizing this distinction, the panel below sought to fashion a rule sensitive to the nature of the instrumentality used. It concluded that we may infer an officer’s intention to seize whomever the dog encounters within some spatial limitation. Therefore, it subscribed to the view that a law enforcement officer who intentionally deploys a dog to seize someone intends to seize anyone in “the space” where the dog is released. Sebastian v. Douglas Cty., 2013 COA 132, ¶¶ 24–29, __ P.3d __.

 ¶40 But what exactly is the space? And how would parties apply such a nebulous concept in a principled fashion across a broad array of factual scenarios going forward? Sebastian alleges that he was approximately ten feet from the boys as they hopped the fence and Deputy Black loosed the dog, but the division below concluded Sebastian was not in the relevant space. The court of appeals explained he was “not located in the direction,” i.e., in the path of, the dog because “the dog had to turn to see Sebastian in the car.” Id. at ¶ 28. Fastening a directional component to the spatial analysis, however, defeats its purpose. The dog isn’t fired off in a straight line. The benefit of a dog as a tool of seizure is its ability to improvise, to turn and track in response to new developments, to hunt. Spatial analysis is an attempt to grapple with the dog’s autonomy. Sometimes the dog’s choices align with the handler’s goals. Sometimes not. But “the space” doesn’t matter because what is critical is the intentional release of the dog. From there, if the dog finds someone and bites him, the seizure is complete.

 ¶41 The majority rests on the K-9’s failure to distinguish and thereby gives the dog too little credit and too much power. The dog’s job is to find and to bite, and if it manages to do both, it has had a successful day. If the dog deviates from the officer’s intended quarry and bites the wrong person, that does not overrule the officer’s intention to deploy the dog in the first place. It is the selection and deployment of the dog as the instrumentality to effect a seizure that matters. But, for the majority, that holds true only if the dog sticks to the plan. While the dog in this case may have gone off script in biting Sebastian, “[t]he dog is not a defendant in this suit nor could it be.” Andrade v. City of Burlingame, 847 F. Supp. 760, 764 (N.D. Cal. 1994).

 ¶42 Ultimately, the faulty premise supporting today’s majority opinion, as well as the opinion of the panel below, is that an actionable seizure requires the intent to acquire physical control over a specific target or a target within some specific space, as opposed to simply releasing the dog with the intent that the dog find and bite any person in any space. Adhering to Brower, I find this more generalized intent sufficient for determining whether there is a seizure.

 ¶43 The majority seeks to distinguish the prominent K-9 cases from around the country by noting that many of them simply involved mistaken identity—law enforcement sent the dog to find and bite a bad guy, only to discover that the bad guy (e.g., a burglar) was really a good guy (e.g., a homeowner). The majority seems to accept that these cases involved seizures because, even though the dog attacked an innocent person, it was at least the person whom the officer intended the dog to attack. A requirement that the person bitten be the person targeted leaves random, innocent bystanders—those whose seizure by police dogs is the least reasonable—with no Fourth Amendment claim because of their status as bystanders. This is not the proper test.

 ¶44 A recent decision from the Northern District of California is instructive on this point. In McKay v. City of Hayward, 949 F. Supp. 2d 971, 975–76 (N.D. Cal. 2013), police officers used a police dog to track a suspect. The dog guided the officers to an eight-foot-high concrete wall. One of the officers then chose to lift the dog over the wall and lower it without warning into the backyard of a residence. The dog mauled an elderly, innocent homeowner who later died from complications related to his injuries. The homeowner’s children alleged that the state actors had violated the homeowner’s right to be free from unreasonable seizures. In denying the state’s motion for summary judgment, the court found that there was a seizure because of the “intentional deployment of a police dog trained to track and bite a person.” Id. at 979. “That [the homeowner] was not the robber or the target of the search does not matter.” Id.  (emphasis added).

 ¶45 To similar effect is Garcia v. City of Sacramento, No. 10–cv–00826–JAM–KJN, 2010 WL 3521954 (E.D. Cal. Sept. 8, 2010). Garcia was an innocent bystander attacked by a K-9 that was supposed to be pursuing a fleeing suspect. Id. at *1. Because the police “consciously deployed [the dog] to search for and subdue [the suspect],” Garcia’s complaint stated a Fourth Amendment-based claim under section 1983. Id. at *2. The court noted that although the dog attacked the wrong person, the police clearly had the intent to use the dog to terminate an individual’s freedom of movement. Id. That was enough for a seizure. Id.

 ¶46 This doesn’t mean that anytime a K-9 bites someone there is a basis for a lawsuit. Some cases involve dogs not trained to find and bite, such as scent-tracking dogs. E.g., Dennis v. Town of Loudon, No. 11–cv–302–JL, 2012 WL 4324932, at *1, *5 (D.N.H. Sept. 20, 2012) (holding no seizure occurred where a dog, tracking the scent of another person, bit Dennis in the woods because the dog was not deployed “with the intention of gaining control of Dennis or anyone else” (emphasis added)). Other cases involve dogs that simply escape their handlers. E.g., Andrade, 847 F. Supp. at 762, 764–65 (granting the defendants’ motion for summary judgment where the dog bit two girls after escaping the squad car’s rear compartment and jumping out of the driver’s open door). Absent a handler’s command to seize, there can be no meaningful argument that there has been an intentional termination of freedom of movement.

 ¶47 Here, however, there is nothing to suggest the dog’s release was accidental (e.g., due to escape). On the contrary, it is undisputed that the deputy intentionally employed his K-9 to find and bite someone. The deputy intended to release the dog. He intended for the dog to chase and seize the suspects from the car. Therefore, he intended a governmentally sanctioned seizure and intended for his dog to be the instrumentality for that seizure. The dog did its part by terminating a person’s freedom of movement. (And not just any person—someone from the car.) Although it may be true that Deputy Black did not intend to seize Sebastian in particular, that is irrelevant.

 ¶48 Of course, the threshold question of seizure is just one component of a meritorious Fourth Amendment claim. Whether releasing the dog under these circumstances constituted an unreasonable use of force is a separate issue not before us. See McKay, 949 F. Supp. 2d at 983 (“Using a police dog . . . is not a per se use of excessive force. Rather, a plaintiff must show that it was clearly established that, under the circumstances, the use of the police dog was unlawful.” (citation omitted)). Thus, to recognize what happened to Sebastian as the seizure that it was does not impose liability on the county or any of its officers. The use of K-9s and other non-lethal tools can help police perform their critical duties while also protecting citizens from more deadly forms of state power, but whether Sebastian’s section 1983 claim is meritorious—itself just one factor in the C.R.C.P. 60(b) analysis under Goodman Associates, LLC v. WP Mountain Properties, LLC, 222 P.3d 310 (Colo. 2010)—is not within the scope of the issue on which we granted certiorari review.

 ¶49      For all these reasons, I respectfully dissent.

 I am authorized to state that JUSTICE MÁRQUEZ joins in this dissent.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || February 29, 2016

Back