Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 9, 2023

**2023 CO 2**

**No. 22SA264, *McMichael et al. v. Encompass PAHS Rehabilitation Hospital, LLC d/b/a Encompass Health Rehabilitation Hospital of Littleton*—Civil Procedure.**

In this original proceeding, the supreme court concludes that a trial court did not err in (1) vacating its default judgment against a limited liability company ("LLC") after finding excusable neglect under C.R.C.P. 60(b); and (2) granting the LLC's motion to change venue. The court determines that the trial court did not abuse its discretion by choosing to hear the matter on the merits. It further concludes, applying the holding announced today in this matter's companion case, *Nelson v. Encompass PAHS Rehabilitation Hospital, LLC,* 2023 CO 1, __ P.3d __, that an LLC's residence, for venue purposes, is determined based on the residence of the LLC, not the residences of its members.

Accordingly, the supreme court discharges the rule to show cause.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

## 2023 CO 2

---

### Supreme Court Case No. 22SA264
*Original Proceeding Pursuant to C.A.R. 21*
Boulder County District Court Case No. 22CV30294
Honorable Patrick Butler, Judge

---

### In Re
### Plaintiffs:

Patricia McMichael and Lynette McMichael,

v.

### Defendant:

Encompass PAHS Rehabilitation Hospital, LLC d/b/a Encompass Health
Rehabilitation Hospital of Littleton.

---

### Rule Discharged
*en banc*
January 9, 2023

---

**Attorney for Plaintiffs:**
Rhoden Law Firm
Garry J. Rhoden
 *Craig, Colorado*

**Attorneys for Defendant:**
Rodman & Rodman, LLC
John R. Rodman
Brendan P. Rodman
Cala R. Farina
Sheridan S. Couture
 *Denver, Colorado*

**Attorneys for Boulder County District Court:**
Philip J. Weiser, Attorney General
Bianca E. Miyata, Assistant Solicitor General
        *Denver, Colorado*

**JUSTICE BERKENKOTTER** delivered the Opinion of the Court, in which
**CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**,
**JUSTICE GABRIEL**, **JUSTICE HART**, and **JUSTICE SAMOUR** joined.

JUSTICE BERKENKOTTER delivered the Opinion of the Court.

¶1 In this original proceeding under C.A.R. 21, we review the trial court's order (1) vacating its prior default judgment against Encompass PAHS Rehabilitation Hospital, LLC d/b/a Encompass Health Rehabilitation Hospital of Littleton ("Encompass"); and (2) granting Encompass's motion to change venue from Boulder County to Arapahoe County. We conclude that the trial court did not abuse its discretion by choosing to hear this matter on the merits despite Encompass's thirteen-day delay in responding to the complaint. Further, applying our holding in the lead companion case announced today, *Nelson v. Encompass PAHS Rehabilitation Hospital, LLC*, 2023 CO 1, P.3d __, we conclude that the trial court did not err in transferring venue from the Boulder County District Court to the Arapahoe County District Court. Because the residence of a limited liability company ("LLC"), for venue purposes, is the residence of the LLC, rather than the residences of its members, the county designated in the complaint was not the proper county, and Encompass was entitled to a change of venue as a matter of right. Accordingly, we discharge the rule to show cause.

## I. Facts and Procedural History

¶2 Patricia and Lynette McMichael ("the McMichaels") are the co-personal representatives for the estate of Charles McMichael ("Mr. McMichael"). The McMichaels allege that Mr. McMichael sustained injuries and died after falling on

3

at least three occasions at a rehabilitation hospital owned by Encompass. The McMichaels sued Encompass, asserting claims for negligence; medical negligence; negligent hiring, supervision, retention, and training; and premises liability. Although Mr. McMichael was a resident and Encompass is a resident of Arapahoe County, and the alleged torts occurred at Encompass's rehabilitation hospital in Arapahoe County, the McMichaels filed their lawsuit in Boulder County.

¶3     After the McMichaels filed their complaint in May 2022, Encompass failed to file a timely response. The McMichaels moved for default judgment, which the trial court granted. Thirteen days after a response to the complaint was due, Encompass filed two separate pleadings with the court: (1) its attorneys' entry of appearance and (2) a motion to set aside the default judgment. In its motion, Encompass argued that the default judgment should be set aside because the McMichaels' counsel failed to confer with Encompass's counsel before filing the motion for default judgment. This was particularly problematic, Encompass explained, because the McMichaels' lawyer had been actively engaged for months in communication with its lawyer about, among other things, the proper venue for the case.[1]  In Encompass's view, the failure by the McMichaels' attorney to mention

---

[1] Encompass further explained that (1) the McMichaels' attorney also represented Floyd Nelson (in what became this matter's companion case) in his Boulder

4

the motion for default judgment appeared to be a calculated effort to unfairly and prejudicially disadvantage Encompass. Encompass further argued that Boulder County was not the proper venue as Mr. McMichael was a resident of Arapahoe County, Encompass was a resident of Arapahoe County, the alleged torts occurred in Arapahoe County, and Encompass was a Colorado resident.

¶4 After weighing the pertinent factors under *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1116 (Colo. 1986), and *Craig v. Rider*, 651 P.2d 397, 400–01 (Colo. 1982), the trial court vacated the default judgment. It noted that counsel for the McMichaels failed to confer with counsel for Encompass despite his obligation to do so and despite the "ongoing discussions" between the parties before the default judgment motion was filed. The court further concluded that the short delay did not prejudice the McMichaels. Accordingly, the trial court granted Encompass's motion to set aside the default judgment so the matter could be heard on its merits.

¶5 Encompass then moved for a change of venue pursuant to C.R.C.P. 98(f), reiterating that (1) neither party was a resident of Boulder County, (2) the alleged torts did not take place in Boulder County, and (3) Encompass was not an out-of-state resident (meaning the McMichaels could not properly designate a Colorado county of its choosing in which to file its complaint). After careful analysis, the

County District Court case against Encompass and (2) it is represented by the same attorney in both cases.

trial court found that venue was not proper in Boulder County, and granted Encompass's motion to change venue to Arapahoe County.[2]

¶6 The McMichaels then filed a petition for a rule to show cause pursuant to C.A.R. 21, which we granted.

## II. Analysis

¶7 We start by discussing our original jurisdiction to hear this matter pursuant to C.A.R. 21. Then, we explain the pertinent standard of review and relevant legal principles before turning to consider whether the trial court abused its discretion either by vacating the default judgment or by granting Encompass's motion to change venue.

### A. Original Jurisdiction and Standard of Review

¶8 This court may exercise its original jurisdiction in those "extraordinary circumstances 'when no other adequate remedy' is available." *People in Int. of A.C.*, 2022 CO 49, ¶ 6, 517 P.3d 1228, 1233 (quoting C.A.R. 21(a)(1)). "[W]e have historically cabined" our original jurisdiction to those matters where "an appellate remedy would be inadequate, a party may suffer irreparable harm, or a petition raises an issue of first impression that has significant public importance." *People v. A.S.M.*, 2022 CO 47, ¶ 9, 517 P.3d 675, 677.

---

[2] In *Nelson*, a different Boulder District Court judge reached the opposite conclusion in ruling on a motion to change venue involving the same issues.

6

¶9 We choose to exercise our original jurisdiction here to review the trial court's orders granting Encompass's motion to set aside the default judgment and its motion to change venue. The trial court in this case and in *Nelson*, this matter's companion case, reached conflicting conclusions regarding how to determine an LLC's residence for purposes of analyzing venue under C.R.C.P. 98. Further, exercising our original jurisdiction is appropriate because of the risk of irreparable harm to the parties involved when "[t]he trial court's order setting aside the default judgment forecloses all avenues for collecting the default judgment." *Nickerson v. Network Sols., LLC*, 2014 CO 79, ¶ 8, 339 P.3d 526, 529 (exercising our original jurisdiction to review an order setting aside default judgment).

¶10 With respect to the standard of review, we emphasize that weighing the relevant factors for relief pursuant to C.R.C.P. 60(b)(1) remains within the province of the trial court. *Sebastian v. Douglas Cnty.*, 2016 CO 13, ¶ 18, 366 P.3d 601, 606. Thus, we review a trial court's order to set aside a default judgment under C.R.C.P. 60(b) for an abuse of discretion. *Nickerson*, ¶ 10, 339 P.3d at 529. "Even if [we] . . . disagree with the trial court's disposition of a motion, [we] must respect the decision unless the movant proves that the trial court's judgment was 'manifestly arbitrary, unreasonable, or unfair.'" *Sebastian*, ¶ 18, 366 P.3d at 606 (quoting *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010)).

## B.  Default Judgment

¶11 Default judgments are disfavored. This is because default judgment is "the harshest of all sanctions," which is why it "should be imposed only in extreme circumstances." *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001); *see R.F. v. D.G.W.*, 560 P.2d 837, 839 (Colo. 1977) ("A judgment by default is not designed to be a device to catch the unwary or even the negligent."). Disposing of a case on procedural grounds rather than on the merits warrants serious caution and should only occur in the rarest of occasions. *See People v. Davenport*, 998 P.2d 473, 475 (Colo. App. 2000). Courts possess other tools, such as sanctions, to impose lesser punishments on negligent counsel where default judgments are not appropriate. *See id.* When deciding whether to set aside a default judgment, a court's underlying goal must be to "promote substantial justice." *Buckmiller*, 727 P.2d at 1116.

## C. Setting Aside a Default Judgment

¶12 Review of a trial court's order setting aside a default judgment is deferential both because "the criteria for vacating a default judgment should be liberally construed," and because a trial court's order setting aside a default judgment will not be disturbed unless the record reflects a clear abuse of discretion. *Sumler v. Dist. Ct.*, 889 P.2d 50, 56 (Colo. 1995). With this understanding, we turn next to the

three pertinent factors courts should consider in connection with a request to vacate a default judgment.

¶13 Pursuant to C.R.C.P. 60(b), a court may relieve a party from a final judgment entered because of excusable neglect. A party seeking to set aside a default judgment bears the burden of showing that the default judgment should be set aside by clear and convincing evidence. *See Borer v. Lewis*, 91 P.3d 375, 380–81 (Colo. 2004). In *Buckmiller*, we laid out three criteria that courts should consider when determining whether to relieve a party of a default judgment under C.R.C.P. 60(b): "(1) whether the neglect that resulted in entry of judgment by default was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged order would be consistent with considerations of equity." 727 P.2d at 1116; *see also Craig*, 651 P.2d at 402. "[A] trial court may deny a motion to set aside a default judgment for failure to satisfy any one of the three criteria." *Buckmiller*, 727 P.2d at 1116; *see also Goodman Assocs.*, 222 P.3d at 321 ("[W]hile our decisions have itemized the necessary considerations in a list of separate factors which by themselves can be a basis for denial of the motion, in application the factors are not so easily confined or separated."). With these principles in mind, we now turn to the trial court's analysis.

¶14 First, excusable neglect: "A party's conduct constitutes excusable neglect when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty." *In re Weisbard*, 25 P.3d 24, 26 (Colo. 2001) (quoting *Tyler v. Adams Cnty. Dep't of Soc. Servs.*, 697 P.2d 29, 32 (Colo. 1985)). "Common carelessness and negligence do not amount to excusable neglect." *Id.* (quoting *Tyler*, 697 P.2d at 32). We have further held that a trial court, "in determining whether a party has established excusable neglect under C.R.C.P. 60(b), should not impute the gross negligence of an attorney to the client for the purpose of foreclosing the client from rule 60(b) relief." *Buckmiller*, 727 P.2d at 1116.

¶15 Here, the trial court found Encompass established excusable neglect. Encompass explained that the reason for its delayed response was a docketing oversight in its lawyer's office. Because we defer to the trial court's findings and its apparent conclusion that the default resulted from "honest mistakes rather than willful misconduct, carelessness or negligence," we conclude the trial court did not abuse its discretion in finding excusable neglect. *Plaza del Lago Townhomes Ass'n v. Highwood Builders, LLC*, 148 P.3d 367, 374 (Colo. App. 2006) (quoting *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981)). We note that we may have reached a similar conclusion if the trial court had come out the other way, but we cannot say on this record that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *See Sebastian*, ¶ 18, 366 P.3d at 606 (holding that

10

even if we "disagree with the trial court's disposition of a motion, [we] must respect the decision unless the movant proves that the trial court's judgment was 'manifestly arbitrary, unreasonable, or unfair.'" (quoting *Goodman Assocs.*, 222 P.3d at 314)).

¶16 Turning to the second *Buckmiller* factor, we note that Encompass set forth a potentially meritorious defense based on its reference to the report by the Colorado Department of Public Health and Environment regarding Mr. McMichael's death, which cited no deficiencies in the treatment and care he was provided by Encompass.

¶17 Finally, we turn to the equitable considerations at issue here. In assessing whether equitable considerations warrant setting aside default judgments, we have instructed trial courts to "take into account the promptness of the moving party in filing the rule 60(b) motion, the fact of any detrimental reliance by the opposing party on the order or judgment of dismissal, and any prejudice to the opposing party if the motion were to be granted." *Buckmiller*, 727 P.2d at 1116. These considerations are analyzed in light of our preference for resolving cases on the merits. *Craig*, 651 P.2d at 402–03 ("Resolution of disputes on their merits is favored, and we have been receptive to promptly filed motions to set aside default judgments."). When weighing these equitable considerations, the underlying goal is "to promote substantial justice." *Goodman Assocs.*, 222 P.3d at 319.

¶18 Here, equitable considerations lean heavily toward vacating the default judgment. Encompass's delayed responsive pleading was filed just thirteen days past its deadline. Moreover, the trial court acted well within its discretion in considering counsel's failure to tell Encompass's counsel about the motion for default judgment.

¶19 The parties engaged in extensive negotiations concerning possible early mediation before the McMichaels filed their complaint. Counsel also discussed their dispute regarding venue and spoke about the case the day before the motion for default judgment was filed. Despite these discussions, counsel for the McMichaels never mentioned the default judgment motion to opposing counsel.

¶20 The McMichaels contend, however, that the trial court abused its discretion by considering this information because they were not obliged to confer with Encompass's counsel at all. To support their position, they point to the court of appeals' holding in *Plaza del Lago*, 148 P.3d 367. We are unpersuaded.

¶21 In *Plaza del Lago*, the division held that the movants had no obligation to confer with opposing counsel under C.R.C.P. 55(b) when they "did not file a responsive pleading or otherwise communicate with the trial court in a manner that was sufficient to indicate to the court that it was aware of the proceedings and intended to participate in them." *Id.* at 371. However, the division in *Plaza del Lago* did not address an attorney's broader obligation to confer under C.R.C.P. 121,

12

section 1-15(8). But even assuming without deciding that section 1-15 of C.R.C.P. 121 did not apply here, the trial court did not abuse its discretion in considering the specific circumstances surrounding counsel's communications—or lack thereof—when considering the prejudice to the McMichaels and whether the equities weighed in favor of granting or denying the motion to set aside the default judgment.

¶22 Next, the McMichaels argue that the equities weigh in their favor because they would face tremendous prejudice if we let the trial court's ruling vacating the default judgment stand. They contend that the decedent's widow, petitioner Patricia McMichael, faces pain and trauma from the court's order excusing Encompass's thirteen-day delay, and that vacating the default judgment has "generat[ed] a sense of hopelessness and frustration." While we are sympathetic to these concerns, we are disinclined to dispose of such serious matters on procedural grounds instead of the case's merits. *See Craig*, 651 P.2d at 402–03 ("Resolution of disputes on their merits is favored, and we have been receptive to promptly filed motions to set aside default judgments . . . .").

¶23 Here, we are persuaded that the trial court rightly found no material prejudice to the McMichaels from such a short delay. This is especially so given that the delay may well have been avoided entirely if counsel for the McMichaels had alerted Encompass's counsel of his plan to seek default judgment. Because

13

the delay here was fairly minor and did not cause the McMichaels substantive prejudice, we conclude that the trial court did not abuse its discretion in vacating the default judgment.

## D. Whether Encompass Waived its Venue Challenge

¶24 Parties waive venue-related challenges by entering "a general appearance and pleading [on] the merits." *Slinkard v. Jordan*, 279 P.2d 1054, 1056 (Colo. 1955) (quoting *Kirby v. Union Pac. Ry.*, 119 P. 1042, 1054 (Colo. 1911)). Venue challenges are also "waived unless the motion is interposed at the earliest possible moment." *Kirby*, 119 P. at 1054. In determining whether a party has waived its challenge to improper venue, courts must look to "an intention to waive the express statutory privilege as to the place of trial . . . or which could be held to constitute a waiver in fact." *People v. Dist. Ct.*, 182 P. 5, 6 (Colo. 1919). Moreover, "[u]nless it is necessary to enforce procedural rules to protect substantive rights, litigation should be determined on the merits, rather than on technical application of procedural rules." *Davenport*, 998 P.2d at 475 (quoting *Watson v. Fenney*, 800 P.2d 1373, 1375 (Colo. App. 1990)).

¶25 Here, Encompass filed a general appearance. However, the general appearance was filed along with Encompass's motion to set aside the default judgment, which explicitly argued that the default judgment order should be set aside because "venue is not proper." Moreover, once the trial court vacated its

14

order for default judgment, Encompass promptly filed its motion challenging venue in Boulder County. Because Encompass timely challenged the appropriateness of venue in Boulder County, we conclude that Encompass did not waive its objection to the trial court's venue.

### E. Venue Is Not Proper in Boulder County

¶26 The McMichaels assert that the trial court abused its discretion in granting Encompass's motion to change venue because it should have looked to the residence of the LLC's members to determine venue. They argue that this is how federal courts analyze diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and that we should follow the same approach here to determine where an LLC resides for purposes of venue.

¶27 But as we explain today in *Nelson*, the concerns underlying federal diversity subject matter jurisdiction are distinguishable from those involved in determining proper state court venue. For that reason and because LLCs, like corporations, are distinct from the collection of individuals who run or own them, we concluded that the residence of an LLC for venue purposes is properly determined by the residence of the LLC itself, not by the residences of its members.     *Nelson*, ¶ 29, __P.3d    .

¶28   Here, because (1) Mr. McMichael resided in Arapahoe County, (2) Encompass resides in Arapahoe County, (3) the alleged torts took place in

15

Arapahoe County, and (4) Encompass is a Colorado resident, the trial court properly granted Encompass's motion to change venue from Boulder County to Arapahoe County.

## III. Conclusion

¶29 The trial court did not abuse its discretion when it vacated the default judgment order against Encompass. Further, Encompass did not waive its challenge to venue in Boulder County. Finally, applying the rule announced today in *Nelson* that the venue of an LLC is determined by the residence of the LLC, rather than the residences of its members, we conclude that the trial court did not err by granting Encompass's motion to change venue from Boulder County to Arapahoe County. Accordingly, we discharge the rule to show cause.